WEST, Respondent, vs. WALKER, Administrator, and others, Appellants.

*September 26 — October 14, 1890.*

*(1) Jurisdiction: Real actions: Place of trial.  (2–4) Antenuptial agreement: Modification after marriage: Election by widow to take dower, etc.: Deceit as to value of husband's property: Estoppel.*

1. Where an action for the recovery of real property has been brought in a county other than that in which the property is situated, the court has jurisdiction and the action is properly triable where commenced, unless steps are taken to have the venue changed.

2. In an action to recover dower it appeared that an antenuptial agreement executed by the plaintiff and her deceased husband had been lost or destroyed. The attorney who drew it, a witness thereto, and another attorney who used it in drawing a subsequent agreement testified as to its terms, substantially agreeing that the deceased therein agreed that the plaintiff should have $1,000 from his estate if she survived him, and her support as long as she lived, in lieu of dower and in full of all allowances and all claims against his estate, and that the plaintiff therein agreed to marry him and be a true wife. *Held,* that the terms of the agreement satisfactorily and sufficiently appeared from the evidence, and that it was a valid agreement, binding upon both parties.

3. A subsequent agreement, executed some years after the marriage and shortly before the husband's death, with substantially the same terms, but making slight additional gifts to the plaintiff, is *held* to be merely an amendment and continuation of the antenuptial agreement, it being conclusively shown that it was so understood

and intended by the deceased, although by its terms it revoked the previous agreement. The plaintiff could not, therefore, waive the benefits of the later agreement, and claim dower and her other rights in the estate under the law.

4. Having lived with her husband for several years before the execution of the later agreement, the plaintiff will be presumed to have known then the value and extent of his property; and by her acceptance of such agreement, making but a slight additional provision for her, she is estopped to claim that when the antenuptial agreement was executed she was deceived as to the amount of his property.

APPEAL from the Circuit Court for *Portage* County.

Action to recover dower, possession of the homestead, and the plaintiff's lawful share of the personal estate of her deceased husband. The facts are stated in the opinion. The post-nuptial agreement therein referred to was as follows:

" This agreement made this 16th day of March, 1886, between Calvin West, party of the first part, and *Elizabeth West*, party of the second part, all of Portage county, Wis.

" *Witnesseth:* That the said parties are man and wife, and that they have agreed what the said party of the second part shall be paid in full satisfaction for all her interest and dower right in all the personal and real property of the said party.

" I, Calvin West, do hereby revoke and make null and void all previous contracts and agreements thereto, and the said Calvin West does hereby covenant and agree on his part that, during his natural life and the life of his said wife, he will in sickness and in health provide for her all the necessaries of life and such luxuries as may be suitable and proper considering their circumstances in life, that in case of her death, that he will provide a Christian funeral for her remains, pay all expenses thereof as well as for her last illness, and make no claim upon her personal estate whatever, real or personal, and shall have full control of it, the estate, and sell it at any time that she may see fit, and in

case of her death prior to his she may will the same as she may see fit. And in the case of his death prior to her decease, she shall have out of his estate, or as she may choose, either in Government bonds, four per cent. bonds, the sum of one thousand dollars, and all the household furniture, and all my clothing, which shall be in full satisfaction and payment of all and every claim against his estate, including dower and all other allowances, including the two hundred dollars allowed her by statute.

" And the said *Elizabeth West* doth hereby accept the foregoing provisions on her part, and doth agree to comfort him in sickness and health, and in àll things be a prudent and faithful wife and homekeeper for the said Calvin West, her husband, during their lives, and further agrees that she will sign such deeds and conveyances of the real estate of said husband as he may desire to sell and convey during the period aforesaid.

" And it is further agreed that if unhappy differences arise between them so as to prevent their residing together as aforesaid, then and in that event they will arbitrate such differences either by agreeing upon an arbitrator or by each choosing one, who in case of disagreement shall choose a third, and each shall and will abide their award, and sign all necessary deeds and agreements to perfect and carry out such award.

" And it is further agreed that neither of said parties shall contract any debts or liability without the consent of the other.

" In witness whereof the said parties have hereunto set their hands and seals the day and dates above written.

" Signed, sealed, and delivered the 16th day of March, 1886.

" In the presence of

" T. H. WALKER,

" C. E. W. FELCH.

CALVIN X WEST,    [SEAL.]
his
mark.

E. WEST,    [SEAL.] "

The defendants appeal from a judgment in favor of the plaintiff.

For the appellants there were briefs by *A. S. Spooner*, attorney, and *Cate, Jones & Sanborn*, of counsel, and oral argument by *A. S. Spooner* and *D. Lloyd Jones*.

For the respondent there was a brief by *Raymond & Brennan*, and oral argument by *John Brennan*.

ORTON, J.    The facts of this case are substantially as follows: On the 19th day of October, 1882, one Calvin West, a widower, and the father of several children, at the age of eighty-five years, then residing in Walworth county, in this state, and the owner of a half section of land in section 25, township 1, range 15 E., lying in said county, intermarried with the plaintiff, then one *Elizabeth Butler*, a widow, and twice before married, and the mother of at least one child, then being in said county, and of the age of sixty-one years, and for a time they lived in the house and on the homestead of the said Calvin West on said land.    A short time before said marriage, and on the 16th day of August, 1882, the said parties entered into a written antenuptial agreement, signed by both of them in the presence of witnesses, by which the said Calvin West agreed to give to the said *Elizabeth* $1,000 from his estate, on his death, if she survived him, and her support as long as she lived, in consideration and in lieu of her dower in his lands, and in full of all allowances whatever and claims against his estate; and the said *Elizabeth* agreed to marry the said Calvin, and be to him a true and faithful wife.    This contract was executed in duplicate, and delivered to each party respectively. This is the substance of the contract as derived from the testimony of witnesses, the originals having been lost or destroyed.    This would seem to be the substance of the agreement, but it was probably put in better form, having been drawn by A. S. Spooner, Esq., an attorney at law of

said county, who, together with Spencer H. West, one of the sons of the said Calvin, about sixty-five years of age, and a witness to said contract, and *T. H. Walker, Esq.*, an attorney at law of the county of Portage, and administrator of the estate, who had seen the contract, testified of its contents. The terms of this contract were few and short, and could easily have been remembered, and all of the witnesses, including the said *Walker*, substantially agreed as to the terms thereof.

The learned circuit court found " that the said Calvin West and the plaintiff in this action, prior to their marriage, made an antenuptial agreement of some kind, but what were the terms of such agreement in full does not satisfactorily appear from the evidence." We are compelled to differ from the learned circuit court and hold that the terms of said agreement do both satisfactorily and sufficiently appear, and that said agreement was valid and binding on both of said parties as an antenuptial agreement, by which the plaintiff surrendered her right of dower in the lands of said Calvin West, and all claims against his estate, in consideration of her support during her life, and $1,000 of his estate. The plaintiff herself testified that the agreement was signed by both of them, and one of them delivered to her, and that it was executed two or three months before their marriage. In *Wilson v. Holt*, 83 Ala. 528, an antenuptial agreement that had been destroyed was established on less evidence. There was perfect agreement of the witnesses as to its contents, and no contradictory testimony on the question. At the time of said marriage, the plaintiff had known the said Calvin West for twenty years, and she was entirely destitute of property and of means of support, except the use of a house and lot. This agreement was made in view of their prospective marriage, and their marriage was one of its stipulations, and based upon its faith and validity. It may be said to have been one of

the inducements of the marriage, and one of the conditions, upon which it took place, and we might almost say that it would not have taken place without it.

The great importance and materiality of this antenuptial agreement sufficiently appears. Calvin West died on the 28th day of March, 1886, where he had lived with the plaintiff for some time, at the residence of the plaintiff's married daughter in Portage county, in this state, with whom they had been boarding. He left a personal estate, valued by the referee at $10,000, and proved to be worth $17,000, and said real estate was appraised at about $9,000. He left a will, by which he devised to the heirs of six of his children, and to an adopted son, all of his property, in certain amounts, to the extent of about $6,000, and the residue thereof to be equally distributed between his heirs at law. Letters of administration were granted by the county court of Portage county to the said *Walker*, one of the respondents. About two weeks before the said Calvin West died, he executed an instrument in writing, drawn by the said *Walker*, of substantially the same terms of said antenuptial agreement, with the additional stipulation on his part giving to the plaintiff all his household furniture and clothing, and making the $1,000 payable in government bonds. This instrument repeats that it should be in full satisfaction and payment of all and every claim against his estate, including dower and all other allowances. There is only one stipulation in said instrument on her part, in addition to those in said antenuptial agreement, but of no particular consequence, and that is that neither should contract debts without the consent of the other. The first clause of this instrument is that " all previous contracts and agreements thereto " are thereby revoked and made null and void.

This action is brought in the Portage county circuit court, where the said Calvin West died. It is stated in the complaint that the plaintiff filed in said county court of Portage

county, on the 13th day of January, 1887, a notice in writing that she elected to take the provision made for her by law, instead of any other provision, and claiming her right of dower in the lands of which her husband, the said Calvin West, died seised, and the same rights to the homestead and the same share of his personal estate as if he had died intestate. This action is brought to have it adjudged that the plaintiff is entitled to dower in the aforesaid real estate, and to have it assigned to her, and to have the homestead therein set apart to her, and her share in the personal estate adjudged to her; and such is substantially the prayer of the complaint, and such is substantially her recovery in the action by the findings and judgment.

The above last-mentioned instrument was introduced in evidence by the learned counsel of the plaintiff, in order to show that the said antenuptial agreement had been canceled and revoked, and they so contend on this appeal; and it appears that she has set aside and waived said instrument also, and now demands her legal rights in the estate, or the provisions made for her by law; and this claim was sanctioned by the circuit court. This statement of the case makes intelligible the questions of law raised on the appeal.

1. The learned counsel of the appellants contend that the circuit court of Portage county, in which the suit is brought, had no jurisdiction of the case; that it is a local action, and should have been brought in the Walworth county circuit court, within whose jurisdiction the lands are situated. Without following the argument of counsel to any further extent, the present statute appears to settle the question beyond controversy by the clear and explicit terms thereof. Sec. 2620, R. S., provides that "every action named *in either of the classes in the first subdivision of the preceding section* must be commenced in the county in which the property, or some part thereof, is situated, *subject to a change of the place of trial, as hereinafter provided.*" Then follows, in

the next section, the provision that, "when the county designated in the summons or complaint in any action is not the proper place of trial thereof," — and the section goes on to provide for the removal of the case to the proper county in the usual way as to all actions. This must be the way to remove all those local actions "named in either of the classes mentioned in the first subdivision of the preceding section," for it is the way *thereinafter provided*, and there is no other provision thereinafter that could have been referred to in the clause, "subject to a change of the place of trial, as hereinafter provided." This action is named in one of the classes in the *first* subdivision of the preceding section — to wit, in the first class — "for the recovery of real property," etc. These sections cannot be otherwise construed without violating their obvious sense and language. Such is the construction given to these provisions in *Woodward v. Hanchett*, 52 Wis. 482, where it is held that this method of changing the place of trial to the proper county is applicable as well to actions "which are *local in their nature*, as to actions which are by statute made local by reason of the residence of the defendant or other cause;" and that "*any action* may be tried in the county designated in the summons or complaint, unless changed" in the manner pointed out in sec. 2621, R. S. Although the action in that case was not a local action in the sense of this action, yet it involved the construction of all of these provisions in order to harmonize them and the practice under them. We see no reason to change the opinion there given, and it may be considered a settled question. There not having been any steps taken to change the place of trial as required by the last-mentioned section, the action was properly triable in the county where it was commenced.

2. The main and important question in this case is, What effect had the post-nuptial instrument on the antenuptial

agreement? It will be observed that this instrument makes but little change of that agreement. The plaintiff is to have the furniture and clothing of the deceased. She testified that, after her marriage with the said Calvin West, she had to use her own furniture in his house, because he had none, and from his great age and penurious habits, as she describes them, he could not have procured much furniture of his own afterwards. His clothing would certainly be of scarcely any value to her. The change made in the antenuptial agreement by this instrument was very slight, and scarcely worthy of the name. The testimony on behalf of the plaintiff would seem to show that the old gentleman was very greatly troubled, and felt grieved that he had made such a small and inadequate provision for the plaintiff in that antenuptial contract, and that he wanted that agreement destroyed, and to make another and better provision for her. All his anguish and anxiety, and all his good and liberal intentions, about which there is much display in the testimony, finally resulted in adding to his former benefaction a very small lot, if any, of poor furniture, and his old clothing. This would be intensely ludicrous, if it was not for the obvious mental weakness, and the want of adequate appreciation of even small things, of Calvin West, in consequence of his great age, and so near his death. It would seem that there' must have been some other reason than such a very slight change in the antenuptial agreement for having it destroyed, canceled, or superseded by this new instrument. Was the legal effect of this instrument, as now claimed in behalf of the plaintiff, then contemplated and understood? Was it for the purpose of getting rid of the antenuptial contract, the benefits of which the plaintiff would be unable to waive and claim her rights in the estate under the law, and of having this post-nuptial agreement take its place, the benefits of which she could so waive and claim such rights? Calvin West was then about ninety

years of age, and it was within two weeks of his death. He could not have been expected to live long at the longest. Under such circumstances, does it not appear strange that he should stipulate at length in this instrument that he will provide for the plaintiff the necessaries, and even the luxuries of life, and for her Christian burial, and make no claim on her real or personal estate, and, in case of differences between them, that they should be arbitrated. Was this to make a show of a new and original agreement between them, that they were incompetent to make as husband and wife, and that she could repudiate after his death? One thing is very certain, that Calvin West did not understand such a legal effect of the instrument. He evidently understood that it was a mere amendment of the antenuptial agreement, or addition to it of those two articles of property, his furniture and clothing. The witness *Walker*, who was employed to draw the instrument, testified that he said "he had not done fair" by the plaintiff in the former contract, and "he wanted it *altered*," and that "he wanted me to *amend* it," and "wanted to give her, *in addition* to what she had in the other one, the household furniture." *Mr. Walker* drew the instrument from the old agreement that he had by him, and he was asked by Mr. West if the old one was of any further use, and he told him that he did not think it was. He asked if he had any right to make another contract, and *Mr. Walker* told him that he had, and that the old one would be no good after this one was made. He said that "he wanted to make a *change* in the old contract." This testimony shows conclusively that Mr. West did not suppose that he was entering into a new contract and that the effect of the old one would be destroyed by it. He thought that the old one need not be preserved, because it was included in the new one, and that the old one was merely rewritten or copied into the new one, with the "*addition*," "*amendment*," "*change*," or "alteration," by insert-

ing in it the furniture and clothing. That was really all the change there was. He was bound by the first one to support the plaintiff during life.

It follows that the validity of the old contract was not destroyed or in any way affected by the new one; but was merely altered or changed in that one respect. Beyond what was copied from the old contract, it did not require her signature. It was his sole act. It was the additional gift of the furniture and clothing. The same consideration is preserved. It was not a new contract, or any contract between them which he or they could not make in consequence of their marriage. He had a right to change the old agreement, and give her more than it provided; and he did so, and she accepted it. That is all there is of it. If he was under any disability to so change the antenuptial agreement, then it was not changed. It is very clear that there was no intention to destroy that agreement so as to destroy or impair its legal effect. It was perpetuated and continued in the new instrument. This is the only reasonable construction of the transaction. The claim, therefore, that this instrument canceled and avoided the antenuptial agreement so as to render it of no effect, and that the plaintiff had the right to waive the benefits of the so-called second agreement, and take under the law, is unfounded; and the findings and judgment of the court to that effect are not supported by the evidence. The plaintiff is bound by said antenuptial contract as changed or altered by the said instrument; and her interest in the estate of Calvin West, deceased, must be measured by what she agreed to receive therefrom in and by said agreement, so altered. She has no dower interest in said lands, or any interest in said estate, under the law, or except as so stipulated in the agreement so changed or altered. The evidence by which these facts appear was introduced by the plaintiff, and therefore the objections to it,

made by the appellants, need not be considered. The plaintiff is bound by it.

It is contended by the learned counsel for the respondent that it appeared from the evidence that the said Calvin West deceived the said plaintiff as to the extent and value of his property, by failing to inform the plaintiff thereof, and that if she had known the extent and value of the same she would not have entered into said antenuptial agreement, and that she was defrauded therein, and that therefore said agreement is void and of no effect. The testimony is that the plaintiff had known the said Calvin West for about twenty years before that time, and that she had lived in his vicinity and among his relatives. These facts, together with her omission to make any inquiry about it, would seem to repel any claim that she was ignorant of it. But she is estopped by having accepted an alteration of said agreement by the addition of the household furniture and clothing of the said West, by said instrument, which increased her interest in his estate but very little, if any, after she had lived with him over four years, and must be presumed to have known then the extent and value of his estate; and she insists upon the validity of such subsequent agreement, and the effect thereof to cancel and destroy the antenuptial agreement. This shows very clearly that she either knew the value of his estate or would not have refused to enter into said agreement if she had known it, for she repeated the agreement with such slight alteration after she did know it.

This is a question of fact on the evidence with this court, and the legal principles involved are elementary and need no authorities; and the questions argued by the learned counsel on both sides need not be considered so far as they relate to the case, treating the instrument last made as an original agreement, valid or otherwise. The plaintiff has

not asked any relief under either of said agreements so called, and she therefore has no further use for the action, and it should be dismissed, that she may obtain her interest in said estate by virtue of the antenuptial agreement so altered.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded with directions to dismiss the complaint on its merits.