## NICHOLAS STAUB'S APPEAL FROM PROBATE.

First Judicial District, Hartford, March Term, 1895. ANDREWS, C. J., TORRANCE, FENN, BALDWIN AND HAMERSLEY, Js.

A woman of full age may, by an ante-nuptial contract fairly made and upon adequate consideration, bar or estop herself from claiming an allowance, under § 604 of the General Statutes, from the estate of her deceased husband pending its settlement.

In the case at bar the contract prescribed, among other things, that the pecuniary provision made therein for the intended wife upon the part of the intended husband, should be in lieu of "dower and all other rights, interests and claims" the wife "would have had in the estate" of the husband "if this agreement had not been made"; and upon the part of the wife it was agreed that she would receive the sum of money mentioned "in lieu and as full payment for her dower right and of all other claim and interest she otherwise would have had in his estate," and that "she will not claim or receive any other part or share of the estate" of her intended husband "after his decease." This contract was set up as a defense to an application by the widow for an allowance from the estate. *Held*, upon demurrer, that the widow was estopped by the contract from claiming or receiving an allowance out of the estate of her deceased husband pending its settlement.

[Argued March 5th—decided April 5th, 1895.]

APPEAL from an order and decree of the Court of Probate for the District of New Milford, authorizing an allowance to the widow of John Peck, deceased, during the settlement of his estate; taken to the Superior Court in Litchfield

County and tried to the court, *Robinson, J.*, upon appellee's demurrer to the reasons of appeal filed by the appellants; the court overruled the demurrer and the appellee refusing to answer over judgment was rendered for the appellants and the decree of the Court of Probate was reversed, and the original appellee appealed to this court. *No error.*

The case is fully stated in the opinion.

*Lyman D. Brewster*, for the appellant (claimant).

I. The books on administration and probate law are substantially unanimous in asserting "that a release of all claims in the husband's estate, in an ante-nuptial agreement, is no bar to an allowance." 1 Woerner on American Law of Administration, 173, 174; Schouler on Executors and Administrators, § 453; Crosswell on Executors and Administrators, § 378; Smith's Probate Law, 5th Ed., 163; Herrick and Doxie, Law and Practice of Iowa, 194; Thompson on Homesteads and Exemptions, § 942. The same doctrine is directly held in *Wentworth* v. *Wentworth*, 69 Me., 247; *Murray* v. *Cargill*, 32 id., 516; *Blackington* v. *Blackington*, 110 Mass., 461; *In re Peet*, 79 Iowa, 185, 188; *Pulling* v. *Durfee, etc.*, 85 Mich., 34. In Vermont, the widow's allowance is not even the subject of appeal. *Leach* v. *Leach*, 51 Vt., 440; *Sawyer* v. *Sawyer*, 28 id., 247, per REDFIELD, J.

So far as the cases of *Phelps* v. *Phelps*, 72 Ill., 545, and of *Moore* v. *Moore*, 60 Cal., 526, base the widow's exemption on the interests of the children, that argument is justly questioned, and the doctrine of exemption put on the broad ground of public policy, as stated by Woerner and Thompson in sections above cited.

Where the allowance is discretionary, and dependent on the necessities of the widow, it is held not to be "a right," or a "claim," or an "interest," in the estate. *Barnum* v. *Boughton*, 55 Conn., 117; *Baker's Appeal*, 56 id., 588; *Moore* v. *Moore*, 60 Cal., 526; *Murray* v. *Cargill*, 32 Me., 516; *Woodbury's Appeal*, 57 N. H., 483; *Smith* v. *Howard*, 86 Me., 203, 207, 208. The only cases we have been able to

find, where the ante-nuptial contract has been held to bar the allowance, are cases in which *the contract in terms, distinctly, and specially mentioned the allowance*, with the exception of the dictum in *Brenner* v. *Gauch*, 85 Ill., 362. See *Heald's Appeal*, 22 N. H., 144, and *Paine* v. *Hollister*, 139 Mass., 144.

The cases cited by our opponents do not conflict with the statement of law above made. *Peck* v. *Peck*, 12 R. I., 485, was not concerning " allowance." *Charles* v. *Charles*, 8 Gratt., 486, labors under the same irrelevancy. *Hamrico* v. *Laird* is equally remote, while the cases cited from Iowa and Indiana, against our contention, are really in its favor.

II. The Act of 1877 allowing husband and wife to make a valid contract regarding their property, speaks of the portion each shall have *in the estate of the other*, on his or her decease. We have already shown that an allowance is not considered as a right, interest, or claim in the husband's *estate*. The husband has no power over an allowance ; it is a matter resting in the discretion of the Court of Probate. Nor is an allowance a "statutory share "; it precedes the statutory share, in express terms.

But if under any circumstances an ante-nuptial contract can bar an allowance, it should be only when the allowance is distinctly and specifically named as released in the contract. The contract of release in the present case, on well-settled rules of construction, does not include the allowance.

*James Huntington* and *Frank W. Marsh*, for the appellees, (Staub *et al.*).

I. Can the widow cut off her right to an allowance by a marital agreement? There is no reason, on principle, why she could not, in consideration of a *quid pro quo*, make an agreement of that kind, which would be as binding upon her as any other contract. Such a contract is a mere waiver, and not in any sense a conveyance of property. The *marital* rights of the wife cease upon the death of the husband, including her right to support, *except as provided by statute*. But the wife may, by her voluntary act, relinquish her right

to support from her husband while the relation continues. *Shelton* v. *Pendleton*, 18 Conn., 421; 9 Am. & Eng. Ency. of Law, 816.   The authorities are that the widow may, by antenuptial agreement, release her right to an allowance, certainly where she alone is to be affected thereby.   *Paine* v. *Hollister*, 139 Mass., 144; *Phelps* v. *Phelps*, 72 Ill., 545; *Baker's Appeal*, 56 Conn., 589; *Charles* v. *Charles*, 8 Grattan (Va.), 486; *Hamrico* v. *Laird*, 10 Yerger (18 Tenn.), 222; *Mahaffy* v. *Mahaffy*, 61 Iowa, 679; *Peck* v. *Peck*, 12 R. I., 485; *Paine* v. *Hollister*, 139 Mass., 144; *Naill* v. *Maurer*, 25 Md., 532; *Tiernan* v. *Binns*, 92 Pa. St., 248; *Speidel's Appeal*, 107 id., 18; *Heald's Appeal*, 2 Foster (22 N. H.) 265; *Bremer* v. *Gauch*, 85 Ill., 268; *Weaver* v. *Weaver*, 109 id., 225.

II.  The contract in question should be construed as including claimant's right to an allowance.   Marriage contracts are to be construed liberally.   *Phelps* v. *Phelps*, 72 Ill., 545. The allowance comes fairly within the meaning of the words used.   The release covered all "right," "claim," and "interest."   It is difficult to conceive how any more sweeping or comprehensive language could have been employed, and to deny it the application claimed by the present appellees, is simply to say that no contract can have the effect to waive an allowance, except where that word itself is used.   Certainly the claimant could not appeal to the Superior Court unless she had or claimed to have an "interest" in the estate.   *Norton's Appeal*, 46 Conn., 527.   Furthermore the appellant agrees that she " will not claim or receive any other part or share of the estate."   Is not the allowance when made a " part " of the estate, and does she not claim it in her " application," and if paid to her will she not " receive " it?   Her contract estops her from doing what she is now seeking to do.   It clearly appears " upon the whole contract," however inartificially expressed, that it was the intention of the parties that the payment of the $2,000 was to relieve Mr. Peck's estate after his decease of *all further burdens* of every kind to which it might, but for the contract, have been subjected in favor of the widow by reason of the marriage.

TORRANCE, J.    The principal questions in this case arise
upon the following written agreement:—

" Marriage being contemplated between John Peck of
New Milford in Litchfield County and State of Connecticut
and Sarah Cranston of Brooklyn in the State of New York,
and after marriage said parties intend to reside in the State
of Connecticut, and said Peck having passed the meridian of
his days, (the parties make the laws of the State of Connecti-
cut to govern this agreement) and by the laws of said State
the parties can make a binding contract regarding their prop-
erty, and what portion each shall have in the estate of the
other on his or her decease, which shall be in bar and room
of the portion he or she would have in such estate if such
agreement had not been made.   Now if said marriage occurs
this covenant and agreement made by and between the par-
ties is as follows : Each of said parties covenant and agree
to perform their obligations and duties, with and towards the
other, as the relation of husband and wife demands during
the continuance of said marriage relation.

" Said John Peck covenants and agrees, if said Sarah Crans-
ton survives him, to pay her the sum of two thousand dollars
six months after his decease with interest after it is payable,
said amount to be paid by his administrator or executor, from
his estate ; which sum is to be in room and in lieu of dower
and all other rights and interest and claims said Sarah would
have had in the estate of said John Peck if this agreement
had not been made.

" Said Peck also covenants and agrees, if he survives the
said Sarah, not to claim or receive any part or interest in her
estate, but he will give up all interest he would otherwise
have therein, and that he will release and convey all such
claim or interest to her devisees or heirs at law, on their
request.

" And the said Sarah Cranston, if said marriage takes place,
covenants and agrees, if she survives the said Peck, to receive
said sum of two thousand dollars as herein agreed with inter-
est after payable ; in lieu and as full payment for her dower
right and of all other claim and interest she otherwise would

have had in his estate, and that she will not claim or receive any other part or share of the estate of said John Peck after his decease, but she will release and convey all other claim, right or interest she may or might have therein, if this agreement had not been made, on the request of the devisees or heirs at law of said John Peck.

"But this agreement is not to, and shall not prevent said John Peck from giving her during his lifetime or by his last will and testament such property and sums as he may choose, nor shall it prevent her from claiming and receiving all such property and sums so given besides said sum of two thousand dollars.

"In witness whereof the parties have hereunto, and to a duplicate hereof, set their hands the day of November 30th, 1887."

After the execution of this agreement, the parties thereto intermarried, and resided in New Milford in this State, where John Peck died testate leaving the aforesaid Sarah, his widow, surviving him.

Pending the settlement of his estate in the Court of Probate, the widow applied for an allowance under the provisions of § 604 of the General Statutes of this State. His executors and residuary legatee opposed the allowance on the ground that the widow, by virtue of the provisions of said written agreement, was barred and estopped from claiming or receiving the same.

The Court of Probate held otherwise, and decreed to her an allowance. The case then came by appeal to the Superior Court, where several reasons of appeal were filed, but all of them were subsequently withdrawn, save the first which reads as follows: "That on November 30th, 1887, and previous to her marriage with said John Peck, deceased, the appellee made and executed a written contract with said deceased, a copy of which is hereto annexed marked 'Exhibit A,' by virtue of which contract so entered into by said parties, said widow is barred and estopped from claiming or receiving any allowance for her support from said estate by

said court, or otherwise than as provided in said marriage agreement."

To this reason of appeal the following demurrer was filed : " The appellee, Sarah Peck, widow of said John Peck, demurs to the first reason of appeal, because there is nothing in said ante-nuptial agreement marked 'Exhibit A' which bars, estops or prevents the Court of Probate which granted said allowance to her from so doing, or which bars, estops or prevents her from receiving the same as a matter of law or equity."

The Superior Court overruled said demurrer and ordered the widow to answer over, which she neglected and refused to do ; thereupon the court reversed the decrees of the Court of Probate from which said appeal had been taken; and from that judgment the widow took the present appeal to this court.

The principal question in the case relates to the effect of the ante-nuptial contract upon the right of the widow to claim or receive an allowance.

The power of the Court of Probate, and of the Superior Court sitting as a Court of Probate on the appeal, to entertain and decide this question, seems to have been taken for granted by all concerned ; for no question as to the existence of such power in either court is made upon the record ; and we entertain no doubt that such a power in cases like the present exists in both courts. *Hall* v. *Pierson*, 63 Conn., 332.

The questions discussed in the argument before this court were these two, namely: Whether the widow could by any agreement of this kind, however specific in its terms, bar and estop herself from claiming an allowance ; and if so, whether the agreement here in question includes such right within its scope.

Before discussing these questions it may be well to note in passing, that by the terms of the ante-nuptial agreement, it is not the promise of the money, but the money itself, that the widow agrees to receive in lieu of whatever rights she gives up and relinquishes ; it is not the covenant, but the

cash paid in pursuance of it, that she is to be satisfied with ; and it does not appear on the record whether the money has or has not been paid to her, nor whether the estate is or is not able and willing to pay, nor even whether the time agreed upon for payment had or had not elapsed, when the reason of appeal demurred to was filed.    But all parties concerned in the case have, throughout, treated it as one, where, assuming the money to have been paid or secured to the widow, the question is whether she is then estopped from claiming the allowance ; that is, can she have both the money under the agreement, and the allowance.    This appears to have been the real question tried and decided in both of the lower courts, and certainly it was the real question argued before this court.

It seemed to be conceded on the argument that the widow was barred as to all her other rights as widow, save as to the allowance, and this concession would hardly have been made unless the money had either been paid to her, or was certain to be paid, as agreed.    In view of all this we will assume, for the purposes of the discussion, that the money has been paid, or that it assuredly will be paid, and will consider the questions presented in the light of that assumption.

The first question is whether the widow could, by any agreement whatever, bar and estop herself from claiming an allowance under our statute.    On her behalf the broad claim is made, that any agreement of this kind which she might make is void on grounds of public policy; that it is the policy of the law to preserve as far as possible the integrity and continuity of the family, and to protect it even against the thoughtlessness of men and women; and that contracts running contrary to such policy are void.    We cannot assent to this broad claim.    On principle there appears to be no good reason why such an agreement, if fairly made and entered into, by a woman of full age, for adequate consideration received, should not be binding upon her.    Such an agreement, when fully carried out, has been held binding upon her in reference to her right of dower.    *Andrews* v. *Andrews*, 8 Conn., 79 ; *Selleck* v. *Selleck*, ibid., 85, 86, in

note. And in the case at bar it is conceded that she may thus bind herself as to all her other rights in her deceased husband's estate, save the one in question; but if she can thus bind herself as to her principal rights, it is difficult to see why she may not also do so as to this minor and incidental right to an allowance. The following authorities sustain the conclusion that a fair ante-nuptial agreement to relinquish, or not to exercise the right to, an allowance, whether fixed or discretionary in amount, is neither voidable nor void, but, when carried out, will be enforced against the widow in some proper tribunal. *Paine* v. *Hollister*, 139 Mass., 144; *Weaver* v. *Weaver*, 109 Ill., 225; *Peck* v. *Peck*, 12 R. I., 485; *Tiernan* v. *Binns*, 92 Penn. St., 248; *Heald's Petition*, 22 N. H., 265. That the agreement here in question is a fair one, made by persons of full age, and upon adequate consideration, does not appear to be questioned by anybody; and on the assumption that its provisions have been or assuredly will be carried out on the part of the estate, we see no good reason why they should not be held to be binding upon the part of the widow.

The next question then is whether the contract includes the right to the allowance, as well as all her other rights as widow; and to determine that we must look at its terms. The contract does not appear to be the work of a skillful and careful lawyer; some of its provisions appear to be superfluous; the preamble is not as clear as it might be, and doubts may be raised as to the meaning of some of the terms used; nevertheless, looking at the agreement as a whole, the main thing intended to be accomplished by the parties appears with tolerable clearness, and that we think was, that the estate of the one dying first should remain to his or her heirs, devisees, or legatees, freed and discharged from every burden to the survivor, save and except those imposed by the agreement.

That the agreement covers, and was intended to cover, every other right, interest, claim or demand, of the survivor, save this matter of the allowance, is conceded; but it is claimed that they did not intend to include that, because

they have, it is said, carefully chosen words which exclude it. This claim is based upon these words in the covenants of the respective parties, namely: John Peck says the two thousand dollars shall be in lieu of "dower and all other rights and interest and claims said Sarah would have had *in the estate* of said John Peck if this agreement had not been made." Sarah agrees to receive the money "in lieu and as full payment for her dower right and of all other claim and interest she otherwise would have had *in his estate.*" The argument is that the widow gives up only rights, claims, and interests *in his estate;* that the right to an allowance is not a right, interest, or claim, in his estate; and consequently is not included within the agreement. Now it may be true, speaking technically, and with the strictest accuracy, that the right to an allowance is not a right, nor a claim, not an interest in the estate, nor a property right at all; but it certainly is a right which the law confers upon the widow in proper cases, and which it recognizes and enforces in her behalf on her application; and it is one which may diminish the estate, and as we have seen, one which the widow may agree not to exercise, which agreement under certain conditions will be enforced against her. The discretion vested in the courts of probate, both as to the granting of the allowance and as to its amount, is a legal discretion and not an arbitrary one. *Leavenworth* v. *Marshall,* 19 Conn., 408, 418. The distinction, then, between this right to an allowance *out* of the estate, which may diminish it by some hundreds of dollars, and a right *in* the estate which diminishes it by a like amount, would be, to the mind of everybody but a trained lawyer, a distinction without a difference; and it may well be doubted whether the parties to this agreement, or the person who drew it up, supposed there was any such distinction. If, then, the case turned wholly upon the meaning of these quoted words, it seems a somewhat strained construction to say they do not include a right, the exercise of which may impose quite a burden upon the estate; a burden, too, the extent of which must be largely a matter of conjecture.

But the case does not turn upon these words; for the widow agrees specifically " that she will not claim or receive any other part or share of the estate of said John Peck after his decease "; and these words we think cover the right in question. The allowance granted to the widow by the Court of Probate in this case certainly comes out of the estate as a " part " or " share " of it, within the ordinary meaning of these words; and it comes to her upon her own suit and application. Looking at the agreement as a whole we think she covenanted not to ask for, nor to receive an allowance, and that under the circumstances this covenant is binding upon her.

There is no error.

In this opinion the other judges concurred.