DELLER, Respondent, vs. DELLER and another, Executors, Appellants.

SAME, Appellant, vs. SAME, Respondents.

*December 9, 1909—January 11, 1910.*

*Husband and wife: Antenuptial agreements: Validity: Construction: Adequacy of provisions for wife: Waiver of allowances.*

1. An antenuptial agreement whereby the future wife releases her right of dower and other rights in the estate of the husband upon his death, will be regarded with the most rigid scrutiny and will not be upheld unless free from fraud or imposition.

2. Assuming that an antenuptial agreement may be held invalid because of the mere insufficiency of the provision made for the intended wife, a contract providing that she should receive $5,000 in lieu of all rights given to a widow cannot be held invalid upon that ground, although the husband's estate amounted to $85,000.

3. In construing an antenuptial agreement the general rule applies, that the intention of the parties is controlling; but, so far as the contract is ambiguous and the intention doubtful, that construction which is most favorable to the widow should be adopted if consonant with reason and if no violence is thereby done to the language used.

4. An antenuptial agreement, otherwise valid, which precludes the widow from claiming the allowances provided for by sec. 3935, Stats. (1898), is enforceable.

5. An antenuptial agreement under which the future wife was to receive a certain sum in lieu of her dower right and in lieu of "all right, title, and interest which she would have by law" in the husband's estate, and she agreed that such pecuniary provision so made for her should be in full satisfaction of her dower and that she would not "claim any share" in the personal estate of the husband, precluded her from claiming any allowances under subd. 1, 2, sec. 3935, Stats. (1898).

6. An antenuptial agreement providing that the prospective husband should, "during his natural life and the life of the" intended wife, provide for her all the necessaries of life, and that in case of his death before hers she should have from his estate a certain sum in lieu of her dower right and in lieu of all right, title, and interest which she would have by law in his estate, is construed as giving her at his death, in addition to the specific sum named, the right to a reasonable provision for her support during her natural life.

APPEALS from a judgment of the circuit court for Milwaukee county: J. C. LUDWIG, Circuit Judge. *Reversed on defendants' appeal.*

The deceased, Joseph Deller, was married on May 23, 1895, to the petitioner herein. At that time he was a widower aged sixty-six and she was a spinster aged forty-one. The deceased had several children by his former wife, who were living at the time of his marriage in 1895 and are still living. No issue was born of the marriage which took place at that time. On April 5, 1895, the following antenuptial

agreement was executed and acknowledged between the parties:

"This agreement, made and entered into this 5th day of April, A. D. 1895, by and between Joseph Deller, party of the first part, and *Miss Eva Baer,* party of the second part, witnesseth, that whereas a marriage is about to be solemnized between the parties hereto, and the said Joseph Deller is desirous of making provision for a fit and proper settlement to the use of the said *Miss Eva Baer,* his intended wife, now, therefore, the said Joseph Deller, party of the first part, does hereby agree, if the said marriage be solemnized as aforesaid, that during his natural life, and the life of the said *Miss Eva Baer,* his intended wife, he will in sickness and in health provide for her all the necessaries of life, and such luxuries as may be suitable and proper considering their circumstances, and in all things be a good and faithful husband so long as they both shall live; and the said Joseph Deller does further covenant and agree, in case said marriage be solemnized as aforesaid, that in case of his death prior to the death of his said wife that she, the said *Eva Baer,* shall have out of the estate of the said Joseph Deller the sum of ($5,000) five thousand dollars, lawful money of the United States, to be by her received for her sole and separate use and benefit and at her death to be disposed of by her as she may see fit, the same to be in lieu of her dower right in the estate of the said Joseph Deller, and in lieu of all right, title, and interest which she would have by law in the said estate. And the said *Miss Eva Baer,* in consideration of the premises, does for herself, her heirs, executors, and administrators covenant and agree with the said Joseph Deller, her intended husband, that the pecuniary provision hereinbefore made for her shall be in full satisfaction of her dower in the estate of the said Joseph Deller and shall bar her from claiming the same if she shall survive him after said marriage, and further, if the said marriage shall occur as aforesaid and she shall survive him, that she shall not claim any share in his personal estate, unless some part thereof is given her by his last will or some act done subsequent to the execution of these premises. And it is further agreed by and between the parties hereto, that their respective property possessed at the time of the said marriage, or which

either of them shall thereafter acquire, shall remain the separate property of each and may be by them conveyed or transferred in the same manner as if they were single and unmarried.    And the said *Miss Eva Baer* does accept the foregoing provisions on her part, in case the said marriage shall be solemnized as aforesaid, and does agree to comfort the said Joseph Deller in sickness and in health, and ever to be a prudent and faithful wife, during their lives."

Thereafter the following postnuptial agreement was executed and acknowledged:

"Whereas, a certain marriage settlement bearing date the 5th day of April, A. D. 1895, was made and executed by and between Joseph Deller of the city of Mineral Point, in Iowa county, Wisconsin, and *Miss Eva Baer* (now *Mrs. Eva Deller*), formerly of the city of Milwaukee, Wisconsin, which said marriage settlement is hereto attached; and whereas, said parties are informed and believe that said marriage settlement does not express with sufficient clearness the intention in the minds of the parties thereto at the time of the execution of said marriage settlement: Now, therefore, it is hereby mutually understood and expressly declared by and between the parties to said marriage settlement that it was the intention of both parties at the time of the execution thereof that said Joseph Deller was to provide for his said wife in sickness and in health all the necessaries of life and such luxuries as may be suitable and proper considering their circumstances, for and during the period of his natural life, and that such provision should not continue beyond the life of said Joseph Deller, but that at his death his said wife was to receive five thousand dollars ($5,000) out of his estate and that she should have no other or further claim upon his estate.    In witness whereof the said parties have hereunto set their hands and seals this 7th day of October, A. D. 1895."

Joseph Deller died in June, 1907, leaving an estate of about $85,000, all of which was disposed of by will.    After the will had been admitted to probate the widow filed a petition praying for an allowance of the articles of personal property specified in subd. 1, sec. 3935, Stats. (1898), and praying for a proper allowance for her support during the administration

of the estate, under subd. 2 of said section. The executors contested such allowances on the ground that the antenuptial agreement barred the petitioner's right to them. On September 25, 1907, the county court made an order granting the prayer of the petition, from which order an appeal was taken to the circuit court for Milwaukee county. Thereafter and on December 31, 1907, the widow filed in the county court a renunciation of certain provisions made for her in the decedent's will. On January 22, 1908, the executors paid to the widow the $5,000 stipulated for in the antenuptial agreement; it being stipulated at the time that the acceptance of such sum should not be construed as a waiver of the widow's right to claim interest thereon or to claim the statutory allowances for which she had petitioned. On the trial on the appeal the circuit court held that the widow was entitled to the allowances provided for by subd. 1, 2, sec. 3935, Stats. (1898). The court, however, reduced the allowance of $100 per month, made by the county court to the widow for support during the pendency of the administration proceedings, to $60 per month.

The petitioner appeals from this portion of the judgment of the circuit court, and the executors appeal from the judgment on the ground that no allowance whatever should have been made. The circuit court further found as matters of fact and as conclusions of law that the postnuptial contract was invalid and that the antenuptial contract was not affected thereby; and further, that the antenuptial contract on its face contained an agreement to provide for the support and maintenance of the petitioner during her natural life, in addition to paying the sum of $5,000 as provided in said agreement.

For the plaintiff there were briefs by *Scheiber & Orth,* and oral argument by *Fred Scheiber.*

For the defendants there was a brief by *Quarles, Spence & Quarles,* attorneys, and *George Lines,* of counsel, and oral argument by *Mr. Lines.*

BARNES, J.    The authorities, aside from those of Alabama, are quite unanimous in holding that a valid antenuptial agreement may be made, and this court so decided in *West v. Walker,* 77 Wis. 557, 46 N. W. 819.    Usually in such contracts the woman, in consideration of a specific allowance in money or property, or both, on the death of her husband, surrenders the provisions which the law makes for her in the event of the intestacy of the husband or of her election to renounce the provision made for her by will.    An agreement whereby the future wife releases her claim to her right of dower and other rights in the estate of her husband upon his demise must be free from fraud or imposition, and it will be regarded with the most rigid scrutiny, and will not be approved where it appears that the future wife has been overreached or deceived or has been induced by false representations to make the contract.    *Pierce v. Pierce,* 71 N. Y. 154; *Warner v. Warner,* 18 Abb. N. C. 151; *Kline's Estate,* 64 Pa. St. 122; *Kline v. Kline,* 57 Pa. St. 120; *Tarbell v. Tarbell,* 10 Allen, 278; *In re Devoe's Estate,* 113 Iowa, 4, 84 N. W. 923; *Mintier v. Mintier,* 28 Ohio St. 307; 21 Cyc. 1249, and cases cited.

In *Kline v. Kline, supra,* it is said:

"The relation of parties betrothed to each other is one of unbounded confidence, especially on the part of the woman. They are not in the same category with buyers and sellers, and are not dealing at arm's length."

Language of similar import is used by the New York court of appeals in *Graham v. Graham,* 143 N. Y. 573, 580, 38 N. E. 722, 724, where it is said:

"The relations between the intended wife and her future husband are regarded as confidential and naturally give to the man great influence over the woman with whom he has entered into an engagement of marriage."

Some of the cases hold that a contract barring dower will not be upheld unless it secures for the wife a provision for her

support after the death of her husband.  *Estate of Pulling,* 93 Mich. 274, 52 N. W. 1116; *Mowser v. Mowser,* 87 Mo. 437; *Graham v. Graham,* 67 Hun, 329, 22 N. Y. Supp. 299. We do not approve of this broad rule, however.  The foregoing decisions, as well as many others that might be cited, indicate the attitude of courts toward contracts of this character, and the alacrity with which they grant relief from bargains improvidently made either through ignorance or misrepresentation, where unfair and inadequate provision is made for the support of the wife upon the death of her husband.

The contract before us was apparently made with deliberation.  It was prepared and signed some time before the marriage took place, and was submitted for examination and approval to a brother of the petitioner, with whom she lived, and there is no pretense that its provisions were not carefully read over and considered by *Mrs. Deller.*  If we should accept the construction of the contract contended for by the executors, we would be unable to say that the provision made for the petitioner was so inadequate that the contract could not be sustained, even if we adopted the view that such a contract might not be enforced because of the mere insufficiency of the provisions made for the intended wife.  In such respects as the contract may be doubtful or ambiguous as to what the parties intended, and will therefore admit of more than one construction, that most favorable to the widow should be adopted, if consonant with reason, and if no violence is done to the language used in arriving at such construction.  But in construing a valid antenuptial contract no exception should be made to the general rule that the intention of the parties is controlling and must govern.  *Mintier v. Mintier,* 28 Ohio St. 307. And in the absence of fraud and unfair dealing the parties should be left where they placed themselves.  *In re Devoe's Estate,* 113 Iowa, 4, 15, 84 N. W. 923; *Thompson v. Tucker-Osborn,* 111 Mich. 470, 69 N. W. 730; *McNutt v. McNutt,* 116 Ind. 545, 19 N. E. 115; *Forwood v. Forwood,* 86 Ky.

114, 5 S. W. 361; *Naill v. Maurer*, 25 Md. 532; *Smith's Appeal*, 115 Pa. St. 319, 8 Atl. 582; *Estate of Kesler*, 143 Pa. St. 386, 22 Atl. 892; *West v. Walker*, 77 Wis. 557, 46 N. W. 819.

The questions directly involved on this appeal are whether the petitioner could by an antenuptial agreement waive and surrender the rights given to a widow by sec. 3935, Stats. (1898), and whether, by the terms of her contract, she did so. Subd. 2 of the section makes provision for an allowance to the widow by the county court for her support and maintenance during administration proceedings and before she is awarded the distributive share in the estate to which she may be entitled.   It is obvious that some time must elapse after the death of her husband and before the terms of an antenuptial agreement can be complied with, during which period the widow may have no means of support.   This court has held that it is against the policy of the law to permit a debtor to waive the benefit of exemption laws.   *Maxwell v. Reed*, 7 Wis. 582; *Hiles v. Milwaukee P. & L. Co.* 85 Wis. 90, 55 N. W. 175.   Whether the two situations are not analogous to such an extent that the rule should be extended to contracts like the one before us is not wholly free from doubt.   The decision in *Maxwell v. Reed* seems to be based largely on the provisions of sec. 17 of art. I of our constitution, which makes it the duty of the legislature to enact wholesome exemption laws. This provision has no application to the contract before us. Our attention has not been called to any decision where it is held that the provisions of a statute of like tenor might not be waived by antenuptial contract.   There are a number of courts that have adopted the contrary view, as will be seen from an examination of the following cases: *Staub's Appeal*, 66 Conn. 127, 33 Atl. 615; *Cowles v. Cowles*, 74 Conn. 24, 49 Atl. 195; *Shaffer v. Matthews*, 77 Ind. 83; *McNutt v. McNutt*, 116 Ind. 545, 19 N. E. 115; *McMahill v. McMahill*, 113 Ill. 461; *Young v. Hicks*, 92 N. Y. 235; *Tiernan v.*

*Binns,* 92 Pa. St. 248; *Paine v. Hollister,* 139 Mass. 144, 29 N. E. 541. And in *West v. Walker, supra,* it is said that the antenuptial agreement determines the entire interest which the widow may claim in the estate of her husband, where the contract so provides. The right to an allowance under sec. 3935, Stats. (1898), was not before the court in that case, however, so that the general language used was broader than was necessary. It should be stated that the Illinois court holds that the statutory provision cannot be waived where there are children born of the marriage who are alive at the time of the death of the husband. *Zachmann v. Zachmann,* 201 Ill. 380, 66 N. E. 256; *Merki v. Merki,* 212 Ill. 121, 72 N. E. 9. The Michigan court, which has adopted an extreme view in construing certain antenuptial contracts as not precluding the widow from claiming an allowance during the pendency of the administration proceedings, nevertheless does hold impliedly at least that such an allowance might be barred by an express provision in the contract to that effect. *Pulling v. Durfee,* 85 Mich. 34, 48 N. W. 48; *Bliss v. Livingston,* 149 Mich. 271, 112 N. W. 911. Where the widow is fairly provided for by the antenuptial contract, there is slight danger of her suffering undue privations or becoming a public charge during the interim between the death of her husband and the time when her share can be lawfully paid in whole or in part. She can ordinarily secure credit on the strength of what is coming to her, or, by incumbering her share in the estate, secure the funds necessary to meet her needs. It will seldom be necessary that any considerable period of time should elapse between the death of the husband and the payment of at least a portion of the consideration named in the antenuptial agreement. In the case at bar the husband died on June 19, 1907, and the amount stipulated in the contract was paid on January 22, 1908. It frequently happens that personal representatives of decedents are not in a position to pay the statutory allowance in less time than that which elapsed in the present

case.   We conclude that we should follow the decided cases on the subject, and hold that an antenuptial contract otherwise valid, which precludes the widow from claiming the allowances provided for by sec. 3935, Stats. (1898), is enforceable.

By the contract it was stipulated that the petitioner should receive the considerations named therein "in lieu of her dower right in the estate of said Joseph Deller, and in lieu of all right, title, and interest which she would have by law in the said estate." Petitioner further agreed that the pecuniary provision made for her should be in full satisfaction of her dower and should bar her from claiming the same, and she also agreed not to "claim any share" in the personal estate of the decedent.

When the widow asserted her supposed right under the provisions of subd. 1 of sec. 3935, it would seem to be too plain to admit of argument that she was claiming a share in the personal estate of her deceased husband.   When she made her claim under subd. 2 of the same section for an allowance for her support, it would seem equally clear that she was asserting a right which is given to widows by law and by law only, and a right which she expressly waived by her contract.   We see no ground for saying that the right which the petitioner waived was a right to a distributive share in the estate only. The contract does not say so.   It does say that for the considerations therein named she waives all right, title, and interest she would have by law in the estate.   When she asks that a very considerable sum of money be paid her, which can only be paid by turning over a portion of the estate, or of the proceeds derived from the sale thereof, a claim is necessarily made to a share of the estate.   Without a manifest perversion of the plain and comprehensive language used by the parties in making their contract, we fail to see how the court could construe the contract as precluding the widow from participating in a distributive share of the estate only.   The obvious intention of the parties, when expressed in plain language,

cannot be ignored and some elastic rule of construction sub-
stituted in its stead, from which some different intent may be
argued out. A like construction has been placed by other
courts on contracts of much the same tenor and effect as the
one before us. *Staub's Appeal,* 66 Conn. 127, 33 Atl. 615;
*Cowles v. Cowles,* 74 Conn. 24, 49 Atl. 195; *Shaffer v. Mat-
thews,* 77 Ind. 83; *McNutt v. McNutt,* 116 Ind. 545, 19 N. E.
115; *McMahill v. McMahill,* 113 Ill. 461; *Young v. Hicks,*
92 N. Y. 235; *Tiernan v. Binns,* 92 Pa. St. 248. The con-
trary view is expressed in the Michigan cases heretofore cited.
We think the court erred in permitting the widow to recover
the allowances provided for in subd. 1, 2, sec. 3935, Stats.
(1898).

The trial court found as a conclusion of law that the ante-
nuptial agreement on its face, and without the aid of any ex-
trinsic evidence, contains and imports a promise on the part
of the decedent to maintain and support the petitioner during
her natural life in addition to giving her the specific sum of
$5,000. The right of the widow to an allowance for her sup-
port during life under and by virtue of the contract is not im-
mediately involved on this appeal, but it is involved in an-
other proceeding pending in the county court of Milwaukee
county between the same parties. The facts and the law nec-
essary to a decision upon the question have been fully pre-
sented and argued, and counsel on both sides have united in
a request to the court to decide the question and save expense
to the parties in interest by bringing the litigation to an end.
There is some relation between the two proceedings. Pri-
marily what the widow wants is a provision for her support.
Whether she gets this under the contract or by virtue of the
statute is not particularly important provided she gets it. In
view of the situation presented it has been deemed best to de-
cide the question.

It is the opinion of the court that the antenuptial contract
should be construed as giving to the petitioner the sum of

$5,000, together with a reasonable provision for her support during her natural life. Some of the members of the court reach this conclusion from the instrument itself, unaided by extrinsic facts, not regarding the contract as ambiguous or calling for any elucidation by extraneous evidence; others, while considering the contract in itself ambiguous, reach the same conclusion by construing it in connection with the evidence offered to explain the ambiguity.

The parties to the litigation all concede that, if the post-nuptial contract changes the former one, it cannot be upheld. It is of value only in arriving at what the parties meant and intended by the former contract.

The petitioner appeals from the allowance of $60 per month made her by the county court on the ground that the same is inadequate. In view of the conclusion reached, the question is only important by reason of the bearing it might have on future proceedings. We think the allowance was reasonable in amount.

*By the Court.*—Judgment is reversed on the appeal of the contestants, and the cause is remanded for further proceedings according to law.