## MARY E. WELSH v. WALTER A. WELSH.[1]

July 22, 1921.

No. 22,325.

**Ante-nuptial contract set aside.**

Ante-nuptial contracts are sustained when they are free from fraud, violative of no statute, are equitably and fairly made, and are fair and reasonable in their terms. The entire absence of provision for the wife imposes upon the husband the burden of showing that there was no fraud or concealment and that the prospective wife knew the extent, character and value of the prospective husband's property and the nature and extent of her rights as wife and widow. By ante-nuptial contract involved in this case, the prospective wife, a woman without means, surrendered all marital property rights and received nothing in return. The evidence on the part of the husband did not rebut the presumption arising, and the decision of the trial court setting aside such contract is sustained.

Action in the district court for Redwood county to set aside an ante-nuptial contract. The case was tried before Olsen, J., who made findings and ordered that the contract be set aside. From the judgment entered pursuant to the order for judgment, defendant appealed. Affirmed.

*Alexander Seifert* and *Erickson & Loomis,* for appellant.
*Albert H. Enersen,* for respondent.

HALLAM, J.

Plaintiff brought this action against her husband to set aside an ante-nuptial contract. The trial court decided in her favor and defendant appeals.

Prior to April, 1916, plaintiff lived in Rhode Island. She was about 43 years of age, and had been married, was living apart from her husband, and secured a divorce soon thereafter. She had two children, a

[1]Reported in 184 N. W. 38.

son about 14 and a daughter about 20. Defendant was a man about 50, unmarried, and living on a farm with his mother who was old and needed care. He advertised in a matrimonial paper for a housekeeper. Plaintiff answered. Correspondence followed, in which there was a suggestion of marriage if upon further acquaintance the same should be found agreeable. As a result of the correspondence, plaintiff, accompanied by her son, came to Minnesota in April, 1916, to act as housekeeper for defendant and his mother, and she acted in that capacity until March 15, 1917. Shortly after plaintiff came to Minnesota, the question of marriage was talked over between them, and it was agreed that they should marry at some future time. In June, 1916, defendant procured a marriage license, but no marriage was then performed. About March 14, 1917, plaintiff received a telegram, informing her that her daughter was seriously ill in Rhode Island and asking plaintiff to come to her. Plaintiff applied to defendant for an advance of money. Defendant refused to advance the money, unless they were first married and they went to Springfield and were married, and thereupon defendant advanced plaintiff $26 for expenses of her trip. Before the marriage they went to an attorney and defendant procured the attorney to prepare an ante-nuptial contract which was there signed. The contract was read to plaintiff and she understood its contents. No misrepresentations were made to her and she had a general knowledge of the amount of defendant's property. She signed the contract voluntarily and under no compulsion or excitement except the mental anxiety over her daughter. Defendant owned property which was then worth about $10,000 and has since increased in value.

By the terms of the ante-nuptial agreement, plaintiff renounced all interest in the property which defendant possessed or might thereafter possess, released all dower interest in any lands of defendant and all rights which the law otherwise would give her, including right of inheritance, personal property selection, and all provision for her maintenance which she might be entitled to under the law after defendant's death. Plaintiff had no property and has none at this time. The contract in terms provided that the marriage was the sole consideration for the agreement.

On these facts the court found that the contract was inequitable and unjust to plaintiff, that it lacked mutuality and consideration of any kind except the engagement to marry, that, because of such lack of equity and consideration, a court of equity should refuse to enforce it and adjudged that the contract be canceled and annulled.

This court has been liberal in sustaining ante-nuptial contracts. The substance of the decisions has been that such contracts are to be sustained if they are free from fraud, violative of no statute, are equitably and fairly made and are fair and reasonable in their terms. Desnoyer v. Jordan, 27 Minn. 295, 7 N. W. 140; Hosford v. Rowe, 41 Minn. 245, 42 N. W. 1018; Appleby v. Appleby, 100 Minn. 408, 111 N. W. 305, 10 L.R.A.(N.S.) 590, 117 Am. St. 709, 10 Ann. Cas. 563; Slingerland v. Slingerland, 115 Minn. 270, 132 N. W. 326; Malchow v. Malchow, 143 Minn. 53, 172 N. W. 915. See also Pavlicek v. Roessler, 222 Ill. 83, 78 N. E. 11; Deller v. Deller, 141 Wis. 255, 124 N. W. 278, 25 L.R.A. (N.S.) 751; Kennedy v. Kennedy, 150 Ind. 636, 50 N. E. 756.

In some of these cases cited, it was said that marriage alone is a sufficient consideration to support such a contract. In all of them, some substantial provision was made for the complaining spouse. In some, the complaining spouse had independent means.

In view of the fact that defendant had no children or dependents other than his aged mother, and that plaintiff had no property and was giving up her life to defendant, the contract was not fair or reasonable. Some decisions have held this alone sufficient to avoid such a contract. Mowser v. Mowser, 87 Mo. 437. And see the decisions of this court, above cited. But there is something more to this case. The entire absence of provision for plaintiff has been held in the cases cited and in cases from other jurisdictions, Fisher v. Koontz, 110 Iowa, 498, 80 N. W. 551; Tilton v. Tilton, 130 Ky. 281, 113 S. W. 134, 132 Am. St. 359; 21 Cyc 1250, to impose upon the husband the burden of showing, if he would sustain the contract, that there was no fraud or concealment, and that the prospective wife knew the extent, character and value of the prospective husband's property and the nature and extent of her rights as his wife and widow. Slingerland v. Slingerland, supra. The evidence is not before us. We have only the judgment of the court.

The judgment embodies the findings and these negative fraud in the nature of misrepresentations, but nothing more. It is found that plaintiff had a general knowledge as to the amount of property possessed by defendant. This is not usually regarded as sufficiently specific to sustain such an unequal agreement. See Slingerland v. Slingerland, supra; Warner v. Warner, 235 Ill. 448, 465, 85 N. E. 630. Also there is an entire absence of finding that plaintiff was at all advised as to the nature and extent of her rights as his wife and widow. When we take all these facts in conjunction with the pressure of anxiety of plaintiff over the illness of her daughter and her desire to secure funds necessary to enable her to go to her daughter, really the impelling cause of the execution of both ante-nuptial and marriage contracts at that time, it seems to us clear that defendant has not made the proof necessary to sustain a surrender of all marital property rights, and that the judgment of the trial court should be sustained.

BROWN, J. (concurring).

I concur in the result on the ground that the facts found by the trial court justify the conclusion of unfair and coercive conduct on the part of defendant in procuring plaintiff to sign the agreement amounting to duress of a character to void the transaction. I do not concur in the view that such contracts may be set aside on the naked ground that they are unfair and inequitable.