JOHN HENRY SACKSELL
(Appeal from Probate)
vs.
ESTATE OF VIVIEN MAXWELL SACKSELL
(Gurnee H. Barrett et al., Extrs.)

Superior Court          Fairfield County          File No. 66345

## MEMORANDUM FILED JULY 15, 1943.

*Herman M. Levy,* of New Haven, and *William L. Hadden,* of New Haven, for the Plaintiff.

*Brush & Hannon,* of Greenwich, specially for the Defendant.

MURPHY, J. The plaintiff, an Austrian refugee, met the decedent, then Vivien Maxwell, in March of 1941 in Florida, and married her in Greenwich, May 26th of the same year. Two days before the marriage, an antenuptial agreement was executed between the parties in which each renounced and waived all claim against the property or estate of the other "whether for dower or curtesy, etc., or any other claim now or hereafter existing at common law or by virtue of statute."

· Mrs. Sacksell died October 24, 1942, leaving a will which was made September 16, 1942. Although the agreement provided that either party could by gift or by will make gifts, bequests or devises to the other, the decedent made no provision for the husband, but in the will specifically referred to the antenuptial agreement.

The will was admitted to probate in the Probate Court for the District of Greenwich, from which the husband has appealed to this court. The executors under the will have pleaded in abatement and to the jurisdiction claiming that the antenuptial agreement. divested the husband of any interest that he might have in the estate and he is not an aggrieved party to whom the right of appeal is open. The second count of the plea claiming abandonment was not pursued by the appellees.

To this plea, the husband has filed seven defenses alleging:

(1) Invalidity of the agreement under section 5156 of the General Statutes, Revision of 1930.

(2) Failure of consideration because the psychiatric disturbance of the decedent prevented her from fulfilling her promise of marriage and the covenants and incidents thereto.

(3) The contract was executory and not performed by the deceased.

(4) The contract was unfair, unjust and inadequate.

(5) The contract was against public policy and void.

(6) The contract was based on insufficient consideration.

(7) The agreement was entered into for the sole purpose of providing for Mr. and Mrs. Maxwell, the parents of the decedent, in the event that she predeceased them, and as the parents died before her the agreement is null, void, of no effect and unenforceable.

Section 5156 of the General Statutes, Revision of 1930, provides for the statutory share of the surviving husband or wife in the property of the other. Its provisions do not apply, however, when "by written contract made before or after marriage, either party has received from the other what was intended as a provision in lieu of such statutory share."

On May 24, 1941, Sacksell had about $300 of his own. His intended wife was possessed of substantial estate that had been given to her by her mother. She was in her 45th year and had never married. She was desirous of protecting her parents and providing for them. From the discussions that took place between the parties and with the attorney who prepared the agreement it was apparent that the Maxwells were concerned about the possibilities that would arise if and when Mr. Sacksell came into the family. The matter was fully discussed and Sacksell agreed to the execution of the antenuptial agreement. It was fully explained to him and he readily agreed to it as he maintained that he was marrying for love and not for money. He expected that the marriage would be successful and did not anticipate that the affection and ardor of his fiancee would cool.

While it is true that no money passed between the parties as part of the consideration for the agreement, that does not mean that there was no consideration for it. Marriage itself is a valuable consideration. *Andrews vs. Andrews,* 8 Conn. 79, 84.

In addition there was the mutual renunciation of interest or claim in the property of the other. "Where the parties by an antenuptial agreement mutually relinquish their respective interests in the estate of each other, the agreement is supported by two valuable considerations, one the consideration of marriage, the other the relinquishment of their mutual rights." 13 *R.C.L. Husband and Wife* §36, p. 1016.

To the claim that Sacksell was penurious and therefore his intended wife would be giving up nothing because he had no estate or immediate prospect of acquiring any the converse of the following would be true. "Though the wife owns no property on which the husband's relinquishment may operate, the marriage is a sufficient consideration for her relinquishment of her interest in her husband's estate." 13 *R.C.L. Husband and Wife* §36, p. 1016.

When the marriage was solemnized and consummated the contract was no longer executory. 26 *Am. Jur. Husband and Wife* §277, p. 884.

The courts have always looked with favor upon antenuptial agreements or marriage settlements, as they are often called. In the absence of fraud or imposition and when fairly made and executed they are fully recognized. *Pierce vs. Pierce,* 71 N.Y. 154.

There is no good reason why such an agreement, if fairly made and entered into for adequate consideration, should not be binding. *Staub's Appeal from Probate,* 66 Conn. 127, 134.

Stress has been laid by counsel for the appellant upon the meaning of the word "received" as it is used in the statute. It is true that no tangible thing of value or money was given to Sacksell. No property changed hands. But did the Legislature mean to use the word in the sense that there must be a physical transfer of money or some other article of value? Webster (New International Dictionary [2d ed. 1937]) defines receive as "to take; to accept." Using the word "accepted" in place of "received" in the statute gives the meaning to the statute that was intended. The appellant accepted her marriage to him and the relinquishment of her interest in his property in exchange for his release in her property and his marriage to her.

It was unfortunate for the appellant that the marriage did not turn out as anticipated. The separation that occurred

shortly after the marriage, instead of being for a short period, continued until the tragic death of the decedent and precluded the hopes of the appellant of establishing himself in his wife's favor so that she would provide for him by will or otherwise.

The agreement of May 24, 1941, was intended by both parties as a provision in lieu of the statutory share of each in the estate of the other. The plea in abatement and to the jurisdiction is sustained. Judgment will enter accordingly.