Wood, Appellant, vs. Boynton and another, Respondents.

*September 26 — October 13, 1885.*

Sale of Chattels. *(1) Rescission. (2) Disparity between price and value: Evidence of fraud.*

1. In the absence of fraud or a mistake as to the identity of the thing sold, the vendor cannot rescind the sale and maintain an action of replevin.
2. Where the value of the thing sold was open to the investigation of both parties, and both supposed at the time that the price paid was a fair one, no disparity, however great, between such price and the real value, is to be received in an action at law as evidence of fraud.

APPEAL from the Circuit Court for *Milwaukee* County. The case is stated in the opinion.

For the appellants there was a brief by *Johnson, Rietbrock & Halsey,* and oral argument by *Mr. Johnson:* 1. The

gross disparity between the price paid for the diamond and its admitted value was evidence of fraud, and should have been submitted to the jury in connection with the other facts of the case. *Veazie v. Williams*, 8 How. 134, 150; *Eyre v. Potter*, 15 id. 42, 60; *Byers v. Surget*, 19 id. 303, 311; Kerr on F. & M. (2 Eng. ed.), 169, (Am. ed. 186); *Risch v. Von Lillienthal*, 34 Wis. 258; *Kuelkamp v. Hidding*, 31 id. 511; *Wright v. Wilson*, 2 Yerg. 294; *Barnet v. Spratt's Adm'r*, 4 Ired. Eq. 171; *Deaderick v. Watkins*, 8 Humph. 520; *Morriso v. Philliber*, 30 Mo. 145; *Hardeman v. Burge*, 10 Yerg. 202; *Butler v. Haskell*, 4 Desaus. 651. 2. There was a mutual, vital mistake as to the kind or species of thing sold, and this justifies a rescission. The case is precisely like the cases of "sales by description." In all such cases the courts have held that where the article varied from the description *in kind (not quality)*, the consideration failed and the contract of sale could be rescinded, even though there was neither fraud nor warranty. *Burchard v. Moore*, 3 El. & Bl. 683; *Westropp v. Solomon*, 8 C. B. 345; Story on Sales, sec. 148; *Paton v. Duncan*, 3 Carr. & P. 336; 2 Schouler on Pers. Prop. 621; Benjamin on Sales, sec. 600, and note (P). See, also, 2 Schouler on Pers. Prop. 204; Benjamin on Sales, sec. 77; *Byers v. Chapin*, 28 Ohio St. 300; *Bannerman v. White*, 10 C. B. (N. S.), 844; *S. C.* 31 L. J. C. P. 28; *Josling v. Kingsford*, 32 id. 94; *Azemar v. Casella*, L. R. 2 C. P. 431, 677; 36 L. J. C. P. 124; *Morse v. Brackett*, 98 Mass. 205.

*N.-S. Murphey*, for the respondents:

A mutual mistake as to the quantity or quality of the thing sold is no ground for a rescission of the contract. The mistake must concern the subject matter of the contract; and care must be taken to distinguish between the subject matter and collateral facts, such as quantity, quality, etc. 1 Story's Eq. Jur. secs. 141–151; *Barr v. Gibson*, 3 Mees. & W. 390; Kerr on F. & M. (Am. ed. 1871), 399, 409, 432;

Wood vs. Boynton and another.

*Stebbins v. Eddy,* 4 Mason, 414; *Rhode Island v. Massachusetts,* 14 Pet. 274; *Okill v. Whittaker,* 1 DeG. & Sm. 83; *Buckner v. Street,* 15 Fed. Rep. 365; *Morris Canal Co. v. Emmett,* 9 Paige, 168; *Durham v. Legard,* 34 Beav. 611; *Cooper v. Phibbs,* L. R. 2 H. of L. App. Cas. 149; *Bingham v. Bingham,* 1 Ves. Sr. 126; *Chanter v. Hopkins,* 4 Mees. & W. 399; Leake on Cont. 169; *Hawkins v. Jackson,* 2 Macn. & G. 372; *Grieveson v. Kirsopp,* 5 Beav. 287; *Hill v. Bush,* 19 Ark. 522. And the fraud or mistake must be of such a nature that the plaintiff could not, with reasonable diligence, acquire knowledge thereof when put on inquiry. *Trigg v. Reed,* 5 Humph. 529; Kerr on F. & M. 407; *Hill v. Bush,* 19 Ark. 522; *Daniel v. Mitchell,* 1 Story C. C. 172; *Warner v. Daniels,* 1 Woodb. & M. 90; *Juzan v. Toulmin,* 9 Ala. 662; *Brown v. Leach,* 107 Mass. 364; *Severence v. Whittier,* 24 Me. 120. A contract for the sale of a thing, the extent or value of which is understood to be unknown to both parties, or which is from its nature or character doubtful or uncertain, is valid and binding. *Mortimer v. Capper,* 1 Bro. C. C. 156; *Ridgway v. Sneyd,* Kay, 627; *Frank v. Frank,* 1 Ch. Cas. 84; *Beckley v. Newland,* 2 P. Wms. 182; *Cooth v. Jackson,* 6 Ves. Jr. 24; *Croome v. Lediard,* 2 Mylne & K. 251; *Sullivan v. Jacob,* 1 Molloy, 472; *Baxendale v. Seale,* 19 Beav. 601. Or, if the subject matter be an uncertain thing and the chance be known to both parties, neither can have relief because the reality has turned out to be different from what he anticipated. *Monro v. Taylor,* 3 Macn. & G. 718. The parties in this case were dealing at arms length, and the means of information and knowledge were open to both alike. Kerr on F. & M. 408, 414; *Laidlaw v. Organ,* 2 Wheat. 178; *Kintsing v. McElrath,* 5 Pa. St. 469; *Blydenburgh v. Welsh,* Baldw. 331; *Bronson v. Wiman,* 8 N. Y. 187; *Rhode Island v. Massachusetts,* 14 Pet. 274; *Fox v. Mackreth,* 2 Bro. C. C. 420; *Turner v. Harvey,* Jacob, 178; *Stettheimer v. Killip,* 75 N. Y. 282.

TAYLOR, J.   This action was brought in the circuit court for Milwaukee county to recover the possession of an uncut diamond of the alleged value of $1,000.   The case was tried in the circuit court and, after hearing all the evidence in the case, the learned circuit judge directed the jury to find a verdict for the defendants.   The plaintiff excepted to such instruction, and, after a verdict was rendered for the defendants, moved for a new trial upon the minutes of the judge.   The motion was denied, and the plaintiff duly excepted, and, after judgment was entered in favor of the defendants, appealed to this court.

The defendants are partners in the jewelry business.   On the trial it appeared that on and before the 28th of December, 1883, the plaintiff was the owner of and in the possession of a small stone of the nature and value of which she was ignorant; that on that day she sold it to one of the defendants for the sum of one dollar.   Afterwards it was ascertained that the stone was a rough diamond, and of the value of about $700.   After learning this fact the plaintiff tendered the defendants the one dollar, and ten cents as interest, and demanded a return of the stone to her.   The defendants refused to deliver it, and therefore she commenced this action.

The plaintiff testified to the circumstances attending the sale of the stone to *Mr. Samuel B. Boynton*, as follows: " The first time *Boynton* saw that stone he was talking about buying the topaz, or whatever it is, in September or October.   I went into his store to get a little pin mended, and I had it in a small box,— the pin,— a small ear-ring; . . .   this stone, and a broken sleeve-button were in the box.   *Mr. Boynton* turned to give me a check for my pin. I thought I would ask him what the stone was, and I took it out of the box and asked him to please tell me what that was.   He took it in his hand and seemed some time looking at it.   I told him I had been told it was a topaz, and he said

it might be.  He says, 'I would buy this; would you sell it?'  I told him I did not know but what I would.  What would it be worth?  And he said he did not know; he would give me a dollar and keep it as a specimen, and I told him I would not sell it; and it was certainly pretty to look at.  He asked me where I found it, and I told him in Eagle.  He asked about how far out, and I said right in the village, and I went out.  Afterwards, and about the 28th of December, I needed money pretty badly, and thought every dollar would help, and I took it back to *Mr. Boynton* and told him I had brought back the topaz, and he says, 'Well, yes; what did I offer you for it?' and I says, 'One dollar;' and he stepped to the change drawer and gave me the dollar, and I went out."

In another part of her testimony she says: " Before I sold the stone I had no knowledge whatever that it was a diamond.  I told him that I had been advised that it was probably a topaz, and he said probably it was.  The stone was about the size of a canary bird's egg, nearly the shape of an egg,— worn pointed at one end; it was nearly straw color,— a little darker."  She also testified that before this action was commenced she tendered the defendants $1.10, and demanded the return of the stone, which they refused. This is substantially all the evidence of what took place at and before the sale to the defendants, as testified to by the plaintiff herself.  She produced no other witness on that point.

The evidence on the part of the defendant is not very different from the version given by the plaintiff, and certainly is not more favorable to the plaintiff.  *Mr. Samuel B. Boynton*, the defendant to whom the stone was sold, testified that at the time he bought this stone, he had never seen an uncut diamond; had seen cut diamonds, but they are quite different from the uncut ones; "he had no idea this was a diamond, and it never entered his brain at the time."  Con-

siderable evidence was given as to what took place after the sale and purchase, but that evidence has very little if any bearing upon the main point in the case.

This evidence clearly shows that the plaintiff sold the stone in question to the defendants, and delivered it to them in December, 1883, for a consideration of one dollar. The title to the stone passed by the sale and delivery to the defendants. How has that title been divested and again vested in the plaintiff? The contention of the learned counsel for the appellant is that the title became vested in the plaintiff by the tender to the *Boyntons* of the purchase money, with interest, and a demand of a return of the stone to her. Unless such tender and demand revested the title in the appellant, she cannot maintain her action.

The only question in the case is whether there was anything in the sale which entitled the vendor (the appellant) to rescind the sale and so revest the title in her. The only reasons we know of for rescinding a sale and revesting the title in the vendor so that he may maintain an action at law for the recovery of the possession against his vendee are (1) that the vendee was guilty of some fraud in procuring a sale to be made to him; (2) that there was a mistake made by the vendor in delivering an article which was not the article sold,— a mistake in fact as to the identity of the thing sold with the thing delivered upon the sale. This last is not in realty a rescission of the sale made, as the thing delivered was not the thing sold, and no title ever passed to the vendee by such delivery.

In this case, upon the plaintiff's own evidence, there can be no just ground for alleging that she was induced to make the sale she did by any fraud or unfair dealings on the part of *Mr. Boynton*. Both were entirely ignorant at the time of the character of the stone and of its intrinsic value. *Mr. Boynton* was not an expert in uncut diamonds, and had made no examination of the stone, except to take

it in his hand and look at it before he made the offer of one dollar, which was refused at the time, and afterwards accepted without any comment or further examination made by *Mr. Boynton*. The appellant had the stone in her possession for a long time, and it appears from her own statement that she had made some inquiry as to its nature and qualities. If she chose to sell it without further investigation as to its intrinsic value to a person who was guilty of no fraud or unfairness which induced her to sell it for a small sum, she cannot repudiate the sale because it is afterwards ascertained that she made a bad bargain. *Kennedy v. Panama, etc., Mail Co.* L. R. 2 Q. B. 580.

There is no pretense of any mistake as to the identity of the thing sold. It was produced by the plaintiff and exhibited to the vendee before the sale was made, and the thing sold was delivered to the vendee when the purchase price was paid. *Kennedy v. Panama, etc., Mail Co.* L. R. 2 Q. B. 587; *Street v. Blay*, 2 Barn. & Adol. 456; *Gompertz v. Bartlett*, 2 El. & Bl. 849; *Gurney v. Womersley*, 4 El. & Bl. 133; *Ship's Case*, 2 De G., J. & S. 544. Suppose the appellant had produced the stone, and said she had been told that it was a diamond, and she believed it was, but had no knowledge herself as to its character or value, and *Mr. Boynton* had given her $500 for it, could he have rescinded the sale if it had turned out to be a topaz or any other stone of very small value? Could *Mr. Boynton* have rescinded the sale on the ground of mistake? Clearly not, nor could he rescind it on the ground that there had been a breach of warranty, because there was no warranty, nor could he rescind it on the ground of fraud, unless he could show that she falsely declared that she had been told it was a diamond, or, if she had been so told, still she knew it was not a diamond. See *Street v. Blay*, *supra*.

It is urged, with a good deal of earnestness, on the part of the counsel for the appellant that, because it has turned

out that the stone was immensely more valuable than the parties at the time of the sale supposed it was, such fact alone is a ground for the rescission of the sale, and that fact was evidence of fraud on the part of the vendee. Whether inadequacy of price is to be received as evidence of fraud, even in a suit in equity to avoid a sale, depends upon the facts known to the parties at the time the sale is made.

When this sale was made the value of the thing sold was open to the investigation of both parties, neither knew its intrinsic value, and, so far as the evidence in this case shows, both supposed that the price paid was adequate. How can fraud be predicated upon such a sale, even though after-investigation showed that the intrinsic value of the thing sold was hundreds of times greater than the price paid? It certainly shows no such fraud as would authorize the vendor to rescind the contract and bring an action at law to recover the possession of the thing sold. Whether that fact would have any influence in an action in equity to avoid the sale we need not consider. See *Stettheimer v. Killip*, 75 N. Y. 287; *Etting v. Bank of U. S.* 11 Wheat. 59.

We can find nothing in the evidence from which it could be justly inferred that *Mr. Boynton*, at the time he offered the plaintiff one dollar for the stone, had any knowledge of the real value of the stone, or that he entertained even a belief that the stone was a diamond. It cannot, therefore, be said that there was a suppression of knowledge on the part of the defendant as to the value of the stone which a court of equity might seize upon to avoid the sale. The following cases show that, in the absence of fraud or warranty, the value of the property sold, as compared with the price paid, is no ground for a rescission of a sale. *Wheat v. Cross*, 31 Md. 99; *Lambert v. Heath*, 15 Mees. & W. 487; *Bryant v. Pember*, 45· Vt. 487; *Kuelkamp v. Hidding*, 31 Wis. 503, 511.

However unfortunate the plaintiff may have been in sell-

ing this valuable stone for a mere nominal sum, she has failed entirely to make out a case either of fraud or mistake in the sale such as will entitle her to a rescission of such sale so as to recover the property sold in an action at law.

*By the Court.*— The judgment of the circuit court is affirmed.