Rust v. Fitzhugh, 132 Wis. 549.

---

RUST and others, Executors, Respondents, vs. FITZHUGH, Appellant.

*May 23—September 24, 1907.*

(1) *Executors: Action by: Setoff: Pleading.* (2–7) *Contracts: Validity: Certainty: Enforcement: Consideration: Construction: Accounting: "Expenses:" Interest: Immaterial error.*

1. In an action by an executor or administrator, under sec. 3847, Stats. (1898), a defendant pleading as a setoff a claim against the decedent need not plead facts showing affirmatively that such claim, at the time of the commencement of the action, was valid and enforceable in the county court or that the statute of limitations had not run against it.

2. An agreement by one person to account for and pay over to another a certain portion of the net profits of the future sales of certain lands may be enforced after the sales have been made, although there was nothing in the agreement entitling the promisee to enforce the closing up of the deal by the making of sales and ascertainment of the net profits.

3. In the absence of satisfactory proof of fraud, the smallness of the consideration to support a contract, so long as it is large enough to be measurable, is immaterial, except in case of contract to pay a sum of money.

4. Thus, a consideration of one dollar is *held* a sufficient consideration to support an agreement to pay over one fourth of the net profits of future sales of about 8,000 acres of land, the amount of such proceeds, if any there would be, and the time for such payment being involved in much uncertainty at the time the agreement was made.

5. In an agreement, in consideration of one dollar, to pay over one fourth of the net profits of future sales of about 8,000 acres of land it was provided that expenses connected with the care and sale of the lands were first to be deducted from the amounts received. The parties were not partners. As was anticipated when the agreement was made, years were required to sell the land and collect the proceeds, and the promisor devoted his personal services to the matter. *Held*, that the term "expenses" included all outlays by him in the matter, whether of money or labor, and that the value of his services was to be deducted from the proceeds of the sales in determining what were the net profits.

6. The promisee was entitled to maintain an action for an accounting and payment under such agreement when the lands had been sold and substantially the whole amount of the net profits was in the hands of the promisor, although a small amount of business remained to be done in order to close out the whole transaction; and in such case interest on the amount found due was properly allowed from the commencement of the action.

7. The allowance of a trifling excess of interest in such case, due to computation thereof from the commencement of the action on a small sum received later by defendant, is not deemed worthy of consideration on appeal, the matter not having been seasonably brought to the attention of the trial court or the plaintiffs.

APPEAL from a judgment of the circuit court for Eau Claire county: JAMES O'NEILL, Circuit Judge. *Reversed.*

Action for an accounting under a contract of which the following is a copy:

"Eau Claire, Wis., Sept. 13, 1892.

"Whereas, May 23, A. D. 1889, a contract was made between the Eau Claire Lumber Co., of first part, and E. L. Williams and H. L. Hinckley, of Ithaca, N. Y., and *D. Fitz-*

*hugh,* of Eau Claire, Wis., parties of the second part, for about 8,080 acres of land in townships 27 and 28, ranges 3 and 4 west, in Clark county, and in 27, range 5 west, in Eau Claire county, and 28 and 29, range 5 west, in Chippewa county, for the sum of $10,000, and since this said May 23d aforesaid deeds to most of said lands have been executed and delivered to E. L. Williams. The respective interests in said contract and lands are E. L. Williams and H. L. Hinckley each one fourth and said *D. Fitzhugh* one half undivided. Now, in consideration of one dollar to me in hand paid, receipt whereof is hereby confessed and acknowledged, I hereby agree to account for and pay over to W. A. Rust, his heirs or assigns, the one-fourth ($\frac{1}{4}$) of the net proceeds derived from the sale of said lands above referred to. By net proceeds, are meant all payments of principal and interest for said lands, taxes thereon and expenses connected with the care and sale of the same to be first deducted from the amounts received as principal and interest from the sales of said lands, and the balance remaining being the net profits, one fourth of the same to be paid by me to said Rust.

"[Signed]      Dan'l Fitzhugh."

The defendant answered admitting the death of W. A. Rust; that plaintiffs were the duly authorized executors of his last will and testament; that a contract was made between E. L. Williams, H. L. Hinckley, and defendant as recited in the agreement upon which the accounting was sought, and that lands were conveyed to said Williams to be held for the benefit of the three persons as therein stated, and putting in issue the allegations of the complaint as to the making of the contract with Rust. Defendant further answered counterclaiming for $26,000 and interest, alleged as due him from the estate of the deceased on account of one half the proceeds of lands in which the two were equally interested, all of which proceeds upon a sale of the lands were alleged to have been received by said Rust and retained by him. There were no allegations showing that such claim at the time of answering was allowable by the county court. Plaintiffs replied to the counterclaim putting in issue the ma-

terial issues in respect thereto and stating, in effect, that defendant's demand, if it ever had any foundation, by reason of its not having been filed with the county court having jurisdiction of the settlement of Rust's estate and the expiration of the time limited and duly noticed for the filing of claims in the matter, was extinguished before the action was commenced.

Upon the trial objection to any evidence in support of the counterclaim was sustained because of its not appearing by the answer that when it was interposed defendant's demand was unaffected by the nonclaim statute and proceedings in respect to limiting the time to file claims for allowance by the county court having jurisdiction of the settlement of Rust's estate and that he had an option to work out such demand through such court or by proceedings in the action.

The admissions in the pleadings and the evidence proved, or tended to prove, the following: May 23, 1889, E. L. Williams, H. L. Hinckley, and defendant contracted with the Eau Claire Lumber Company for the purchase of 8,080 acres of land mentioned in the complaint for $10,000. Such proceedings were had in relation thereto that the consideration for the land was paid and the same was deeded to said Williams to be held, one quarter for himself, one quarter for Hinckley, and one half for defendant, the same to be conveyed to purchasers as sales should be made. September 13, 1892, after the land was conveyed to Williams, defendant and W. A. Rust made the contract upon which plaintiffs seek an accounting. Rust repeatedly demanded of defendant an accounting under said contract which was refused. Neither Rust nor plaintiffs had knowledge before the commencement of the action of the receipts and disbursements on account of said lands. All of the accounts were kept by defendant and his associates, and the former did substantially all the business of making sales and collections. The land was sold to a large number of purchasers and the business in respect to

the matter covered a period of several years.   At the time of the commencement of this action all the land had been sold, the original purchase price realized, and all sums on account of sales collected except $175 for one forty, which is still due, and a small sum on land sold to one McPhail not yet paid, but plaintiffs have waived any right to any share of such sums.   The total amount of principal and interest paid by defendant for the land was $5,412.50.   The total amount received by him in excess of expenses connected with the sale and care of the property was $27,824.67, leaving him as net profits $22,412.19, one half of which belongs to plaintiffs as the personal representatives of W. A. Rust.   All receipts from the land sales subsequent to May 1, 1900, were profits.   The personal services of defendant in looking after and selling the land were reasonably worth $6,000.   In the settlement between defendant, Williams, and Hinckley no deduction from the proceeds of sales, in order to arrive at net profits to be divided, was made for personal services.   In arriving at the net profits realized by defendant as aforesaid all expenses were deducted which were considered as between him, Williams, and Hinckley.

The court found in accordance with the foregoing, and the following: The recital in the contract between defendant and Rust of one dollar as a consideration raises a presumption of a good and valuable consideration which is not rebutted by any evidence produced.   Since the personal services of defendant were not considered as a subject for compensation in money in the transaction between him, Williams, and Hinckley, the term "expenses" in the contract with Rust should not be construed as including such subject.   The plaintiffs are entitled to judgment for $11,206.09, with interest at the rate of six per cent. per annum from July 13, 1904, the time of the commencement of the action, with costs.

For the appellant there was a brief by *W. F. Bailey* and *Wickham & Farr,* and oral argument by *Mr. Bailey* and *Mr.*

*James Wickham.* To the point that the contract was void for uncertainty, they cited 1 Beach, Modern Law of Cont. §§ 72, 80; *Pulliam v. Schimpf,* 109 Ala. 179, 19 South. 428; *Davie v. Lumbermen's M. Co.* 93 Mich. 491, 53 N. W. 625; *Faulkner v. Des Moines D. Co.* 117 Iowa, 120, 90 N. W. 585; *Leonard v. Carter,* 16 Wis. 607; *Hoffman v. Maffioli,* 104 Wis. 630; *Teipel v. Meyer,* 106 Wis. 41. The word "expenses" has been construed to include services as well as moneys disbursed. *Matthews & W. Mfg. Co. v. Trenton L. Co.* 73 Fed. 212, 215; *Hall v. Vt. & Mass. R. Co.* 28 Vt. 400; *Catawissa R. Co. v. Titus,* 49 Pa. St. 277; *Emerson v. Durand,* 64 Wis. 111.

For the respondents there was a brief by *Bundy & Wilcox,* and oral argument by *C. T. Bundy.*

The following opinion was filed June 20, 1907:

MARSHALL, J. The first question presented is: Did the court err in excluding evidence in support of the counterclaim?

It is contended by respondents' counsel that since all claims against the estate of a deceased person not presented to the county court, that shall have taken jurisdiction of the settlement of such estate, within the time limited by law and duly noticed to claimants are by sec. 3844, Stats. (1898), forever barred, and it is provided in sec. 3845, Stats. (1898), that a person can only sue an executor, other than for the recovery of specific real or personal property, where no time has been fixed for presenting claims to the county court for allowance, or no notice of such limitation has been ordered or given, which facts in case of such a suit must be stated in the complaint (*Lannon v. Hackett,* 49 Wis. 261, 5 N. W. 474; *Gager v. Paul,* 111 Wis. 638, 653, 87 N. W. 875); that in case of a suit by an executor, as here, and the defendant counterclaiming, his pleading is defective, unless it states all the facts essential to a cause of action by the defendant against

the executor under said sec. 3845, and that it is in effect so· held in Carpenter v. Murphey, 57 Wis. 541, 15 N. W. 798, and also there held that sec. 3847, providing that where a person is sued by an administrator he may "set off any claim; he may have against the deceased, instead of presenting it to the county court or commissioners, and all mutual claims; may be set off in such action," does not modify sec. 3844 so as to allow the setting off of a claim which has been barred by such section; that in order for defendant to have the benefit of sec. 3847 he must have a live claim against the estate of the deceased at the time of the commencement of the action, and that the facts showing the existence of such an enforceable claim must be made affirmatively to appear by the pleading.

True, when a suit is brought against an executor on a claim proper to be filed for allowance by the county court the facts justifying the action under sec. 3845 must be pleaded and are issuable. True, also in case of a defendant, in an action brought against him by an executor, counter- claiming under sec. 3847, he must, in order to succeed, have a demand not barred by sec. 3844. However, this court did not, expressly or in principle, go so far in Carpenter v. Murphey, supra, as counsel suggest. The precise question here was not involved. The counterclaim was pleaded as in this case. By the reply the facts were alleged, as here, showing that the claim was barred by sec. 3844. As the learned counsel for appellant points out, such facts were admitted by demurrer. In that situation it was held that the defendant did not have a pleadable claim under sec. 3847. The question of whether, in such a case, the facts showing that defendant at the time of the commencement of the action had an option to· seek redress in the county court, his claim being enforceable there, or of pleading it against the demand of the plaintiff, is manifestly quite different.

For reasons which we shall omit to state, as they do not prevail and there is not to be any dissent on the point, the writer·

and some others incline to the view that the trial court ruled
rightly in excluding evidence in support of the counterclaim
because facts were not pleaded showing that appellant's claim
at the time of the commencement of the action was enforce-
able in the county court. Since the majority of the justices
hold otherwise, and it is of much importance to have the
law firmly settled on such an important matter of practice,
the view of the majority is accepted by all. The opinion of
the court is this: Sec. 3847 is too plain to be open to con-
struction. It provides without ambiguity or exception that in
case of an action by an administrator or executor against any
person for the recovery of any debt or claim, such person may
set off any claim he may have against the deceased instead of
presenting it to the county court. It does not say the de-
fendant, if he has a valid claim or a claim enforceable in
the county court, may plead the same as a counterclaim in
the action or proceed in such court. It is sufficient, accord-
ing to the language of the section, if he has a claim which
would be pleadable if the action were brought by the de-
ceased, not a claim in the sense, necessarily, of a valid de-
mand, but one which he asserts and wishes to have judicially
passed upon. If there be a defense thereto of payment, or
extinguishment by any statute of limitations, it is to be made
in the circuit court as would be the case if it were presented
in the county court. The facts constituting the claimed cause
of action are the same in one case as in the other. In neither
is it required to plead affirmatively the facts showing that the
demand is not affected fatally by any statute of limitation.
That is a defense under the general rule stated in *South Mil-
waukee Co. v. Murphy,* 112 Wis. 614, 88 N. W. 583.

The practice adopted in *Carpenter v. Murphey,* 57 Wis.
541, 15 N. W. 798, is correct. The defendant there, as we
have seen, set up his claim without any showing as to the
statute of nonclaim. The plaintiff replied, setting up as a
defense the facts in that regard. The same course up to that
point was pursued here, evidently following the *Carpenter*

*Case.* The mistake was in not proving such facts, if they existed, since they were not conceded by demurrer or otherwise.

The next proposition for consideration is that the contract in question is void because Rust did not therein promise anything and there was no agreement whereby he could enforce the closing up of the deal by a sale of the land and determination of the net profits for division. On that a number of cases are cited. It is sufficient to say that none of them are to the effect that an agreement to pay a sum of money ascertainable after the happening of an event which the contract contemplates will happen is not enforceable after such happening. Had appellant or his associates neglected or refused to sell the lands so as to render an accounting of net profits possible and an action had been commenced for damages on account thereof, the principle relied on might have been fatal thereto, there not being any enforceable obligation, expressed, to sell the property and no basis for an ascertainment of damages for a neglect to do so. The contract here clearly contemplated the probable happening of events which would make the amount of money payable to Rust ascertainable to a mathematical certainty.

Next it is contended that the contract is void for want of a sufficient consideration. Generally speaking, a valuable consideration however small is sufficient to support any contract; that inadequacy of consideration alone is not a fatal defect. *Wood v. Boynton,* 64 Wis. 265, 25 N. W. 42; *Clark v. Sigourney,* 17 Conn. 511; *Trustees of Troy Conf. Acad. v. Nelson,* 24 Vt. 189; *Blake v. Blake,* 7 Iowa, 46. That rule is recognized in *Wood v. Boynton, supra,* in these words:

"In the absence of fraud or warranty, the value of the property sold, as compared with the price paid, is no ground for a rescission of a sale."

The same doctrine is stated with many supporting authorities in 9 Cyc. at page 365, thus:

' "So long as it is something of real value in the eye of the law, whether or not the consideration is adequate to the

promise is generally immaterial. The slightest consideration is sufficient to support the most onerous obligation; the inadequacy, as has been well said, is for the parties to consider at the time of making the agreement, and not for the court when it is sought to be enforced."

Where the consideration to support a contract is so small as under all the circumstances to show fraud the agreement is void, but the defect consists in the element of fraud, not at all in the insignificance of the consideration. *Blake v. Blake, supra; Wolford v. Powers,* 85 Ind. 294. The cases cited to our attention by counsel for appellant are to that effect.

There was no element of fraud established in this case or found. The parties seem to have contracted understandingly; no undue advantage being taken of one by the other. The evidence shows that they were business associates and had been for many years, and that they had been accustomed to have important dealings with each other of a character explainable only upon the theory that each deemed himself thoroughly competent to protect his own interest, and that he did so to his satisfaction at the time of each transaction.

A so-called exception, upon which counsel for appellant rely, that a trifling consideration, as one cent or one dollar, will not support a promise to pay a considerable sum of money, the agreement not being characterized by any uncertainty as to time or amount, which is recognized in *Schnell v. Nell,* 17 Ind. 29; *Shepard & Co. v. Rhodes,* 7 R. I. 470, and other cases, is really not an exception at all, since under such circumstances fraud of some sort is presumed. The rule is thus recognized in Langdell's Summary of the Law of Contracts, § 55:

"Though the smallest consideration will in most cases support the largest promise, this is only because the law shuts its eyes to the inequality between them; and hence any inequality to which the law cannot shut its eyes is fatal to the validity of the promise. . . . But this reasoning is obviously inapplicable to a case in which the value both of

the consideration and the promise is conclusively fixed by law; and a promise to pay money in consideration of a payment of money is such a case, *provided the elements of time and uncertainty be wholly excluded.*"

That does not apply to the case in hand. The sum of money that might in the end come out of the speculation was, when the contract was made, involved in much uncertainty. The time when there would be profits for division was involved in like uncertainty. It was liable to take many years, as proved to be the case, to work the matter out. While large profits may have seemed probable it could not have been regarded but that the result might be otherwise, especially in case of the value of the services required to market the land and collect the proceeds being charged up to the deal. There were many possible circumstances liable to materially affect the final result, making the same very profitable to the parties concerned or not so. It was not impossible that the value of the land might go down instead of up, or be largely absorbed by high taxes or other matters. The rule on this branch of the case is that, in the absence of satisfactory proof of fraud, the smallness of the consideration to support a contract, so long as it is large enough to be measurable, is immaterial, except in case of a contract to pay a sum of money. Applying that to the facts the contract in question is valid.

Whether the court erred in not allowing appellant as expenses under the contract the $6,000 found to be the value of his services in selling and caring for the land and making sales and collections is the next important matter for consideration. That depends upon the meaning of the term "expenses" as used in the agreement. That it is somewhat ambiguous, as the fact is, seems to be conceded. The term may mean merely disbursements of money, or that and the use of appliances or other property, or include all outlays of labor whether by the person entitled to be reimbursed or others, as well as outlays of money and the use of property,

according to the purpose intended, which, in case of doubt, is to be determined by ordinary rules for judicial construction. That is quite manifest without authority and is confirmed thereby, as indicated in authorities cited to our attention and others. *Matthews & W. Mfg. Co. v. Trenton L. Co.* 73 Fed. 212, 215; *Dunwoody v. U. S.* 22 Ct. Cl. 269, 278; *Hall v. Vt. & M. R. Co.* 28 Vt. 401. In the first case cited it is said that the word "expenses" may be defined as disbursement of money, but it is as well the employment and consumption of time and labor. In the last case cited a resolution of a corporation for the payment of the expenses of a committee was held to include cash expenses and the personal services of the members of the committee as well.

The learned circuit court restricted the meaning of the term under consideration to cash expenditures and to such as were recognized in the accounting between appellant, Williams, and Hinckley, upon the theory that net profits for division between them was identical, necessarily, with such profits for division between appellant and Rust. What the exact relations were between appellant, Williams, and Hinckley we do not know. Neither do we know the exact relation between appellant and Rust. The record does not satisfactorily disclose those matters, but it sufficiently appears that the former were partners' and the latter were not. So the presumption that personal service was not intended to be compensated for, which applied to the partnership relation (*Drew v. Ferson,* 22 Wis. 651), does not apply to the other. As between Rust and appellant, for the consideration of one dollar, the former purchased one half the net profits realized by the latter out of the land deal. It would seem that net profits as between appellant and his copartners may be very different from the profits contemplated as between him and Rust. While in the former it was the receipts from land sales less the cost of acquiring the property and ordinary partnership expenses incurred in realizing thereon, in the

latter it may, consistently therewith, have been intended to be the share of profits coming to appellant from the firm less his outlay in personal services necessary to obtain the same.

One of the cardinal rules for the construction of a contract is that a meaning should not be attributed to its language which will make the agreement absurd or so unreasonable that one could not be fairly thought to have so intended, if a different meaning can be found in the words which will avoid that result. When the parties made the contract they must have anticipated it might take years, as it did, to close out the lands and collect the proceeds, and it might be required to devote services of the value of thousands of dollars to the completion of the venture and that the burden of rendering such services would be, in the first place, wholly carried by appellant. It must have been anticipated that the most significant element in successfully working out the enterprise would be the devotion by appellant of his personal services thereto and that the value thereof might far exceed all money disbursements. Rust was merely a purchaser for one dollar of one half the net results to appellant, not, necessarily, one quarter of the net results to appellant and his associates. Could it have been contemplated that in arriving at the former Rust should have one half the benefits of appellant's personal services? It does not seem so.

The contract in any view of it is so extraordinary that it should be construed, where construction is permissible, as strongly as it reasonably can in favor of appellant. So construing it, we reach the conclusion that the parties used the term "expenses" in respect to all outlays by appellant, whether of money or labor, in realizing his portion of the proceeds of the land, and that the $6,000 found to be the value of such services should have been deducted from the net amount of $22,412.19, as between him and his copartners, in arriving at the sum to be divided between him and plaintiffs, making the latter's share $8,206.09 instead of $11,206.09.

It is conceded, as we understand it, that if respondents were entitled to an accounting and payment of a share of net profits at the time of the commencement of the action, interest was properly allowed from such time. We so hold and that the plaintiffs were so entitled. *Smith v. Putnam,* 107 Wis. 155, 82 N. W. 1077, 83 N. W. 288, relied upon by counsel for appellant as showing that plaintiffs did not have a cause of action at the time of the commencement of the suit because a small amount of business was yet to be transacted in order to wholly close up the deal, does not apply. In that case there was a partnership and a contract providing that the profits should be divided only upon the completion of the transaction. The action was at law before such completion. Here it seems that whenever there were net profits received into the hands of appellant, Rust or his personal representatives were entitled to a share thereof; that the entire expense of the speculation and the original outlay for the property had been returned long before the action was commenced, and that substantially the sum now found to be subject to division was on hand.

There are some minor matters suggested for consideration in the brief of counsel for appellant which in view of the foregoing need not be treated. They are matters which in the outcome are not prejudicial to appellant. A small sum was erroneously found not to have been paid upon the land deal, which was in fact paid after the action was commenced and included in the judgment, interest being computed thereon in favor of respondents before appellant received the money, resulting in a trifling excess charge for interest. If the trial court's attention had been seasonably called thereto or respondents' had been cited to the matter it would doubtless have been corrected. The excess is so small as not to be worthy of consideration under the circumstances. *Morris v. Peck,* 73 Wis. 482, 41 N. W. 623; *Mahon v. Kennedy,* 87 Wis. 50, 57 N. W. 1108.

The result of the foregoing is that the trial court erred in sustaining the objection to evidence in support of the counterclaim and in refusing to allow appellant as expenses the value, as found, of his personal services, but otherwise the decision below was right. The judgment must be reversed and the cause remanded for a trial only of the issue raised by the counterclaim and the reply thereto, and for judgment in accordance with the result of such trial and this opinion.

*By the Court.*—So ordered.

A motion for a rehearing was denied September 24, 1907.