KEITH and others, Appellants, vs. RUST LAND & LUMBER
COMPANY, Respondent.

*April 4—June 19, 1918.*

*Partnership: Agreement for purchase of lands: Construction: Con-
sideration: Services contributed by one partner in lieu of money:
His interest in the lands: Interest chargeable to him on share of
price: Accounting: Retention of statement: Subsequent charges:
Interest on partner's personal account: Lien on lands: Attorneys
at law: Authority.*

1. An agreement between F., who was an experienced woodsman,
   and five other persons for the purchase of land and timber pro-
   vided that F. should go South and look over such tracts as he
   thought it would be profitable for the parties interested to pur-
   chase and should work exclusively for the interests of this syn-
   dicate or association of persons; that all his expenses should
   be paid by those interested proportionately but there should
   be no pay for his services or for any other person interested;
   that he was "not to furnish any of the purchase money for all
   or any of the lands so to be purchased, but that it is to be pro-
   vided by the other five members of the syndicate and he to be
   charged with interest at the rate of six per cent., payable an-
   nually;" and that the interest of all should "be the same in the
   land.   One sixth each.   F. interest same as others, one sixth."
   *Held*, that there was no obligation on F.'s part to furnish, and
   no right on the part of the other partners to charge him with,
   or deduct from his one-sixth interest in any sale of the lands,
   one sixth of the original purchase price.   If he were so charged
   he would in effect "furnish" a part of the purchase money, and
   the others would not "provide" it, but merely advance it, con-
   trary to the terms of the agreement.
2. Under such agreement F. was to have, not merely a one-sixth in-
   terest in the proceeds or net profits from the sale of the land,
   but, equally with each of the others, a one-sixth interest in the
   land; and this interest was to vest at the same time, to the same
   effect, and with exactly the same conditions and limitations, and
   none other, as the respective interests of the other five.
3. The experience, integrity, and standing of F., together with the
   time and energy necessarily expended by him for several years,
   constituted a sufficient consideration moving from him to sup-
   port the contract.
4. The provision that F. was "to be charged with interest at the

rate of six per cent., payable annually," construed in connection with the other provisions, means that he was to be charged in favor of the other five partners with interest annually on a sum equal to one sixth of the purchase price as it was from time to time paid for the land, until there should be realized from sales a sum equal to the entire purchase price with accrued interest.

5. The retention by F., without apparent objection, of a statement of account sent to him about two years before his death by the defendant corporation (to which the interests of the other five partners had been transferred), which account included a charge against him for one sixth of the purchase price of the lands and interest thereon, cannot be held to bind him as to that charge, nor can the other parties assert such a declaration on their part, as against the terms of the written agreement in that respect.

6. A subsequent charge made by said corporation, without further notification to or consultation with F., for a "portion of office and clerk's services," covering a number of years prior to the sending of the statement above mentioned, could not properly be allowed, both because it was a material change in the account after it had been rendered to F., and because its allowance would be in effect an allowance for services, directly contrary to the terms of the contract.

7. Another subsequent charge made by the corporation for a portion of the salary and expenses of one D. in looking after a part of the lands, covering a considerable time prior to the rendering of the account as above stated, and a charge for interest on this item, should have been disallowed for the reasons above stated and also because there was no proof of actual payment of said salary and expenses.

8. The allowance of interest upon the personal account of F. with the defendant corporation is *held* to have been proper.

9. If the balance found due to the defendant corporation upon the personal account of F. should be larger than the balance found due from the corporation on the land transaction, the amount of the difference in favor of defendant cannot be adjudged to be a lien upon the interest which F. had in the remaining lands, no such lien having been created by act of F. and there being no warrant therefor in the contract.

[10. Whether attorneys representing the estate of F. would have authority, by a stipulation that any balance found due the defendant should be a lien, to bind the estate and so affect the rights of creditors, is not decided.]

SIEBECKER, J., WINSLOW, C. J., and ROSENBERRY, J., dissent.

APPEAL from a judgment of the circuit court for Eau Claire county: A. H. REID, Judge. *Affirmed in part; reversed in part.*

April 24, 1893, at Eau Claire, Wisconsin, one Daniel Fitzhugh and W. A., R. E., and A. J. Rust, John S. Owen, and W. F. Gilchrist entered into a written contract for the purchase of land in the South which is recited in the opinion following.

In May, 1894, *Rust Land & Lumber Company,* defendant herein, was organized by certain of the signers of said agreement other than Fitzhugh, and, by agreement, whatever had been purchased under said contract at that time was conveyed to and the contract thereafter carried on by the defendant corporation in lieu of the individuals.

Daniel Fitzhugh was a woodsman of many years' experience, and after the signing of said contract proceeded to look over lands in the states of Mississippi and Arkansas, which were then purchased pursuant to such agreement by the other individuals therein interested or by said corporation after its organization. Large holdings were so purchased during the years 1894 and 1895 for an amount aggregating more than $61,000. In 1902 sales were made of certain portions of said property so purchased for an amount exceeding $100,000 and in considerable excess of purchase price, taxes, and all other expenses in connection with the same up to that time. The accounts concerning such transactions were kept by the defendant corporation and no statement thereof appears, so far as the record discloses, to have been submitted to Daniel Fitzhugh until May, 1907, when what purported to be a statement of the transactions from 1894 to February 25, 1907, was inclosed in a letter to him asking him to examine the same. He acknowledged the receipt thereof on the following day and added that he had not then had time to examine it. Nothing further appears to have been said or done by either of the parties to such agreement with ref-

erence to such statement of the account up to the time of the death of Fitzhugh in March, 1909. After his death the plaintiffs, *Thomas B. Keith* and the widow of Daniel Fitzhugh, *Bertha M. Fitzhugh,* were appointed administrators of his estate, and those two as such administrators, *Bertha M. Fitzhugh* as widow, together with *William* and *Daniel Fitzhugh,* the only children of Daniel Fitzhugh, deceased, commenced an action against the defendant corporation for an accounting in the transactions between the defendant and said Fitzhugh regarding such lands, and that there might be conveyed to such of the plaintiffs as were heirs of Fitzhugh an undivided one-sixth interest in any and all of the lands so purchased still remaining unsold, and the payment to them of the proportionate share in any and all profits derived from prior sales of said real estate.

From April 24, 1899, a separate account had been kept by the defendant corporation with Daniel Fitzhugh, involving looking after other land matters in which the defendant corporation was interested besides those included in the purchases made under the agreement of 1893, and which account included, from time to time, allowances to him for salary and for disbursements made by him on account of such other matters for the defendant as well as some disbursements made in connection with the lands purchased under the agreement of 1893. In the later years of this account no credit was made on account of the salary, and the balance was in favor of the defendant and particularly in the year 1908, when, on the written order of Fitzhugh, over $7,500 was directed to be paid to satisfy a certain judgment that had been obtained against him in favor of the representatives of one W. A. Rust.

An appeal was taken from the county court on this last mentioned account to the circuit court, and there, on the trial of the action brought by the administrators and the heirs of Daniel Fitzhugh for an accounting under the con-

tract of 1893, it was agreed by stipulation that the two matters might be heard together. Evidence was taken and the two proceedings disposed of by one judgment herein, which was in substance that there was due and owing to the *Rust Land & Lumber Company* under the separate account for transactions with Mr. Fitzhugh personally the sum of $14,799.21; that there was due to the estate of Daniel Fitzhugh, as his interest in the transactions under the contract of 1893, a balance of $7,987.16; and further adjudging that the heirs were entitled to an undivided one-sixth interest in the real estate still remaining undisposed of in Mississippi and Arkansas, with the condition, however, that such real estate should be subject to a lien in favor of the defendant corporation in an amount equal to the balance between the $14,799.21 and the $7,987.16, amounting to $6,812.05.

An appeal was taken by those designated as plaintiffs in the equity action from so much of the judgment as fixed the balance of $6,812.05 as being due the defendant, and from that part of the judgment declaring such sum to be a lien upon such real estate.

For the appellants there was a brief by *Sturdevant & Farr* of Eau Claire, and oral argument by *L. M. Sturdevant*.

For the respondent there was a brief by *Wilson & Armstrong* of Memphis, Tennessee, *Bundy & Wilcox* of Eau Claire, and *Wm. H. Fitzhugh* of Memphis, Tennessee, and oral argument by *Mr. Fitzhugh* and *Mr. Roy P. Wilcox*.

The following opinion was filed April 30, 1918:

ESCHWEILER, J.    The disposition of this appeal required a construction of the contract of April 24, 1893, which reads as follows:

"Memorandum of agreement or understanding for the purchase of land and timber in the South, whereby it is agreed that Mr. Daniel Fitzhugh is to go South and look over any and all such tracts of land as he thinks it would be profitable for the parties interested to purchase, and work entirely and

exclusively for the interests of this syndicate or association of persons; that all his expenses of so doing will be paid ·by those interested proportionately, but there shall be no pay for his services or for any other person interested herein. It is understood and agreed that Mr. Daniel Fitzhugh is not to furnish any of the purchase money for all or any of the lands so to be purchased, but that it is to be provided by the other five members of the syndicate and he to be charged with interest at the rate of six per cent., payable annually. All purchases subject to approval. The interest of all to be the same in the land. One sixth each. D. Fitzhugh interest same as others, one sixth."

The learned trial court held that this contract created a partnership; that in the accounting thereunder Fitzhugh should be charged with one sixth of the purchase money invested in land as of the date of each investment; that as money was received from the sale of lands or rents or trespasses or sale of timber, such money should be applied first to the payment of expenses of looking after the land and paying the taxes and with interest on each item from the date of outlay to the date of repayment, and out of the balance to return to each of those interested, other than Fitzhugh, the capital invested; that upon money being available for such return of capital, one sixth thereof should be credited to Fitzhugh upon his obligation to his five associates based on their advance for him of his share of the capital, applying such credit first to the discharge of interest and then to the reduction of the principal; that when the net moneys received became sufficient to pay all the carrying charges and expenses and to return all the contributed capital, then Fitzhugh became entitled to an undivided one-sixth interest in the remaining lands as tenant in common and thereafter liable for one sixth of the expenses, provided there was not on hand money sufficient for such payments. That interest should be charged against Fitzhugh on advancements for carrying charges, such as taxes, etc., this being based by

the trial court, as stated by him, upon the equitable principle as requiring the estate of Fitzhugh to do equity when his representatives were asking for equitable assistance.

With the usual frankness of the trial court it was conceded that there were difficulties in arriving at the conclusion he did with reference to this contract. Great weight was placed by him upon the provision therein found, that Fitzhugh is "to be charged with interest at the rate of six per cent., payable annually." But for the language of the clause just quoted the trial court indicated that his opinion would have been that Mr. Fitzhugh was to receive a one-sixth interest in and to all lands purchased pursuant to said contract without being charged in any way with any portion of the purchase price thereof, but that he felt it impossible to give effect to that language requiring the charging of interest unless there should be assumed that such interest was chargeable upon some principal sum as due and owing under the contract from Fitzhugh to his associates for the purchase price.

In this contract the following features appear to us to be controlling:

First, that Fitzhugh is to have equally with each of the others a one-sixth interest in the land. We have no right to assume that when they say one-sixth interest in the land they meant one-sixth interest in the net proceeds or net profits from the sale of the land and not the land itself. Nor can we assume that when they say the interest of all is to be the same in the land that they meant the Fitzhugh interest was to be different from that of the five, they to be secured for the purchase money and he to share only when all the purchase money has been reproduced from the land and not until then. Again, unless the interest of Fitzhugh in the land vested at the same time, to the same effect, and with exactly the same and no other conditions and limitations than the respective interests of the five did, then Fitzhugh did not have the same interest as the others in the land.

Second, it was expressly stated that Fitzhugh "is not to furnish any of the purchase money."

Neither here nor in the expression following are words used to indicate that his one-sixth of the purchase price is considered as an advance. If this one-sixth purchase price is treated in the accounting, as was done by the trial court, as an advance to him or to his account by the others and to be taken out of the proceeds of the land or treated as a charge on a one-sixth interest in the land, he has in effect furnished a one-sixth of the purchase price; or again, if it be treated as a loan to him because of the requirement that he is to be charged with interest, then again he has furnished such amount within the reasonable meaning of that term.

Third, it was also expressly stated "but that it [the purchase money for all or any of the land so to be purchased] is to be provided by the other five members." They are to provide, not advance. "Provide" means to supply; to afford; to contribute. Webster, New Internat. Dict.

If the five others get the one-sixth of the purchase price repaid to them out of the proceeds of Fitzhugh's one-sixth interest in the land, or out of the land as an entire thing, then the five have in effect advanced that one-sixth of the purchase price; they have not contributed it, they have only advanced it.

We shall not here assume that these parties meant other than the plain ordinary meaning of the words and expressions that they used.

Trouble is experienced with the provision that Fitzhugh is "to be charged with interest at the rate of six per cent, payable annually." It is a confusing expression as there used. We do not, however, think that this confusion in the one clause can require that contradiction should be forced into the other clauses.

It was held by the court below that interest presupposes a principal sum upon which it can be charged and, none being

found in the terms of the contract, one must be imported, otherwise there is nothing upon which the interest charge is to be supported.

This appears to us to be an inverted process and an exalting of the incident above the principal. The result of the adoption of such view in the court below was to throw awry other and plain provisions of the contract. It in effect construed the language of the contract herein practically as though it contained the express provisions found in the contract involved in the case of *Rust v. Fitzhugh,* 132 Wis. 549, 112 N. W. 508, apparently between the deceased and one of the other parties to the agreement herein and drawn the year preceding the contract here. A comparison of such contracts makes evident the substantial distinction between a contract for net profits as in that case and for an undivided interest in real estate as in this case. The language of that contract, so far as pertains here by way of comparison, was as follows:

"Now, in consideration of one dollar to me in hand paid, receipt whereof is hereby confessed and acknowledged, I hereby agree to account for and pay over to W. A. Rust, his heirs or assigns, the one-fourth ($\frac{1}{4}$) of the net proceeds derived from the sale of said lands above referred to. By net proceeds, are meant all payments of principal and interest for said lands, taxes thereon and expenses connected with the care and sale of the same to be first deducted from the amounts received as principal and interest from the sales of said lands, and the balance remaining being the net profits, one fourth of the same to be paid by me to said Rust."

It is also urged that the construction by the court below should be adopted, for otherwise it would appear that Fitzhugh in this case was getting large returns for a small consideration. The enterprise, however, was one involving possibly a long interval before anything could be realized therefrom; it evidently was more or less of a speculation as to whether it would make large or any returns, and it involved

the pitting of the time and undoubted experience and integrity and standing of the deceased against the capital the others had·or could procure, and we see no reason why the one should be regarded as less entitled to large returns. than the other, and especially so when the parties themselves do say, as here, that "the interest of all to be the same in the land. One sixth each. D. Fitzhugh interest same as others, one sixth." The manna of large returns could not fall upon him and miss them. He could only make purchases of such real·estate as met their approval. They had the veto power and he had no unlimited field for investment. They evidently had faith in him. That was a valuable asset, and with his time and energy necessarily expended for several years he surely contributed a valuable consideration sufficient to support this contract. It is not for a court, in a case like this, to measure and compare respective considerations now by the results as though those results were a certainty and not merely a hope, and not a prophecy even, in 1893. *Rust v. Fitzhugh, supra.*

We are satisfied from the language of this contract, then, that there was no obligation whatsoever on Fitzhugh's part to furnish, or any right on the part of the others to charge him with, or deduct from his one-sixth interest in any sale of the lands, this one-sixth of the purchase price as was done in the accounting.

He was, however, "to be charged with interest at the rate of six per cent., payable annually." We think the most reasonable construction to be given to this feature is that he was to be charged in favor of the other five with interest annually on a sum equal to a one-sixth of the purchase price as it was from time to time paid for the land until such time as there should be realized from the sale of the real estate a sum equal to the entire purchase price with accrued interest. Then such charge against Fitzhugh on that basis to cease.

No objection is made by the appellants to an allowance in favor of defendants of interest on advancements made by them for expenses and taxes until repaid by sales of the land, so no change will be made in the accounting in that regard, and the enterprise may therefore be charged with such expenses taxed and disbursements with interest as was done in the accounting approved by the trial court.

It is urged that by the retention, without apparent objection on the part of Fitzhugh, of the statement sent him in May, 1907, he became bound by all the items and charges therein, among which were charges for the one-sixth purchase price and interest thereon. But between such a statement and a written contract the contract must govern, and defendant cannot assert such declaration on its part in the teeth of the contract any more than it was allowed by the court below to assert its claim for interest on interest embodied in the same statement in the face of sec. 1689, Stats., providing that, unless agreed to in writing by the party sought to be charged, past-due interest shall not be compounded nor interest paid on interest.

The court allowed as a charge against the account of the Fitzhugh land purchase under date of September 21, 1908, an item as follows: "Portion of office and clerk's services for years 1899 to 1907, inclusive, two years at $200, seven years at $500, $3,900."

There was also allowed under date of May 1, 1909, a further charge for interest on the above charge from dates of yearly charges to the date of entry thereof, $871.56. There were a number of other corporations in which the stockholders of the defendant company were also interested and dealing in lands and lumber or acting as holding companies. They had offices and officers together, and as between some of them charges were made from time to time apportioning the office rent and clerk's hire. These items so entered as to such charges of office rent were made after the

account had been submitted to Mr. Fitzhugh in May, 1907, and without further notification to or consultation with him. The contract herein provided, "but that there shall be no pay for his [Fitzhugh's] services or for any other person interested herein."

Such an allowance for office rent and clerk hire would be in effect an allowance for services, directly contrary to this provision of the contract. It was also a material change in the account after it had been rendered to Mr. Fitzhugh, and the defendants have not lifted the presumptions that should be indulged against them by the rendering of such a statement. Such a statement was in the nature of a declaration on their part at least of what their claim of charges was and should, under the testimony here, bind them.

A further substantial change of the account of May, 1907, was made under date of December 31, 1908, and allowed by the court by an item of $821.63 as a portion of one Duschau's salary and expenses from 1905 to 1908 in looking after certain of the land connected with the Fitzhugh land purchase. It appears from the testimony that this charge was made by an officer of the defendant company upon merely a written statement rendered to him in the account of one F. W. Gilchrist, a signer to the contract of 1893 and who was largely interested in his own behalf in Southern lands and by whom Duschau was employed and paid. There was also, after Fitzhugh's death and in May, 1909, a further charge against his account of interest from the average date of entries on Gilchrist's books of this item of $821.63. There was no other proof as to this than that such item was received by defendant's officers as being on the books of Gilchrist. There was no proof of the actual payment of that item. These items should have been disallowed on the same grounds as the preceding ones also.

Complaint is made by the representatives of the deceased, Fitzhugh, that interest was improperly allowed upon the

personal account of Daniel Fitzhugh with the defendant cor-
poration and that the same should have been treated as an
open account current and interest allowable only from the
date of the last entry thereof.    Without discussing this ac-
count in detail, we are satisfied that the view taken by the
trial court as to this matter of interest ought not to be dis-
turbed and as to that account or balance as found and de-
termined by him in the findings the judgment is affirmed. ·

The disposition that is being made of the Fitzhugh land
account will undoubtedly so alter the situation herein that
the balance due the plaintiffs on account of the land deal
under the contract of April, 1893, will be larger than the
balance found due the land company on the personal ac-
count between Fitzhugh and the defendant company, and
that would make it immaterial to consider the question
whether the balance in favor of the land company should be
adjudged a lien upon the interest of the plaintiffs in the bal-
ance of the real estate.    Should it, however, be a material
question, we hold that there is no ground for such a holding
as was made by the trial court.    There was no such lien
created by act of the deceased, nor is there any warrant in the
contract for such a disposition.    It would in effect make the
claim of the *Rust Land Company* on its personal account
with Fitzhugh a preferred claim as against all the other
creditors of the deceased.    The record as it is before us in-
dicates that there are a large number of claims filed against
that estate and far in excess of its apparent assets.    There
was some discussion at the commencement of the hearing of
these two matters as to whether or not it might be finally ad-
judicated that any found balance in favor of the land com-
pany upon the claim it filed in the probate court should be
held to be a lien upon any interest the plaintiffs might be
found to have in the real estate, yet we are satisfied there
was no sufficiently definite stipulation to that effect to author-
ize the determination by the court below as he did on that

point, even if there were sufficient authority in the attorneys representing the estate to so bind it and so affect the rights of creditors.    Upon this latter point we express no opinion.

*By the Court.*—The judgment of the circuit court so far as it affects the determination as to the amount of the claim of defendant against the estate of Daniel Fitzhugh is affirmed, but so far as it affects the rights of the parties under the contract of 1893 it is reversed, and the cause remanded with directions for the taking of an account in accordance with this opinion, appellants to have costs and disbursements in the case.

SIEBECKER, J.    I am of the opinion that the trial court correctly construed the contract in question and properly stated the account between the parties and hence the judgment should be affirmed.

WINSLOW, C. J., and ROSENBERRY, J., dissent.

On June 19, 1918, a motion by the respondent for a rehearing was denied, with $15 costs and costs of motion; and a motion by the appellants to amend the mandate was denied, without costs.