ESTATE OF NICKOLAY: NICKOLAY, Appellant, vs. ESTATE OF
NICKOLAY, Respondent.

*October 23—December 18, 1946.*

For the appellant the cause was submitted on the brief of *Bradford & Derber* of Appleton.

For the respondent there was a brief by *Benton, Bosser, Becker & Parnell*, attorneys, and *David L. Fulton* of counsel, all of Appleton, and oral argument by *Mr. Homer H. Benton* and *Mr. Fulton*.

BARLOW, J.  This case involves the validity of a post-nuptial contract entered into on July 26, 1940, between Walburga Nickolay, petitioner and appellant, and Jacob Nickolay, her husband, now deceased.  Appellant contends the contract is void for want of consideration, because it was procured by fraud, is unconscionable, and is against public policy.  The trial court found that at the time the contract was entered into it was understood by both parties, who were of full age and under no disability, that there was a stated consideration and that the record discloses no duress, coercion, or overt acts establishing fraud, and dismissed the petition.

Walburga Nickolay, a widow, sixty-nine years of age, and Jacob Nickolay, a widower, eighty-nine years of age, were married by a justice of the peace in the state of Washington, June 14, 1940, and then had a religious ceremony on July 9, 1940, when they returned to Seymour, Wisconsin, which had

been their place of residence for many years. Walburga Nickolay had two daughters and a son by her former marriage, all over twenty-one years of age, and self-supporting, and Jacob Nickolay was childless but had reared in his home one Raphael Elsen. The families had been acquainted for over forty years and on friendly terms, and had lived within five blocks of each other for approximately twenty years just prior to this marriage. Appellant and her first husband ran a rooming and boardinghouse at Seymour, Wisconsin, until he died in 1935, and she continued to carry on this business after his death. She inherited a store building and residence property from her first husband, and at the time of her second marriage was worth between $15,000 and $18,000.

The day following the marriage in the state of Washington, appellant and her husband agreed orally that she would accept $500 in settlement of all of her rights in his estate, and on July 26, 1940, they went to the office of an attorney at Seymour, where the postnuptial agreement in question was prepared and signed. The terms of the agreement were talked over with the attorney in the presence of both parties and as finally prepared provided that appellant, in the event she survived her husband, was to receive the sum of $500 from his estate "in full payment and discharge of all claims she may have, as widow and heir at law of the first party, to dower, widow's allowance, homestead or other rights in and to any and all real or personal estate of which he may die seized." The husband released all rights, present or future, in the property or estate of the wife, and it was agreed that each party should contribute one half of the family running expenses. Marriage, mutual releases, and the payment of $500 provided in the contract are recited as the consideration for it. The parties lived together until October 17, 1944, when Jacob Nickolay died, and shortly after his death appellant filed a claim against his estate for the sum of $500. Deceased had an estate of approximately $60,000 when he died.

Appellant argues that there was total failure of consideration, and to sustain her position shows that she would have inherited approximately $20,000 if she had not entered into this agreement. She claims she did not know what her husband was worth—neither did she make inquiry. She had known him for forty years, and knew that he had sold his farm and retired in 1917. She testified that sometime after they were married he said that she had more money than he had, but this was after the contract was entered into. She knew his age, and it must be assumed that she knew his life expectancy could not be very long. She testified that she married the man and did not marry the money, even though she did not know how much he was worth. To say that she was a woman with no intelligence would be wholly unfair, as she had conducted a business for many years, both while her first husband was alive and after his death, and was successful in this business. Likewise she cared for her property and accumulated additional property after the death of her first husband.

The contention that the husband released nothing by releasing any interest in her estate because he was not entitled to a curtesy right, as there were children by her former marriage, is not a sound argument because a curtesy right of the husband is under the absolute control of the legislature and changes in this law have been made in the past and can well be made in the future. It was at least a definite protection to the wife and her children in the event this law was changed. Any subsequent legislation could not impair the obligation of the contract by giving him a right to share in her estate. 137 A. L. R. p. 1099. Where both parties have property and the agreement provides that each shall retain the individual possession with all rights the same as if unmarried, that is sufficient. *Oesau v. Estate of Oesau* (1914), 157 Wis. 255, 147 N. W. 62. In *Estate of Miller* (1921), 173 Wis. 322, 327, 181 N. W. 238, it was said:

"Whether or not a consideration is adequate is a matter exclusively for the decision of the parties. 1 Williston, Contracts, sec. 140."

And in *Rust v. Fitzhugh* (1907), 132 Wis. 549, 557, 112 N. W. 508, on the question of valuable consideration, it was said:

"Generally speaking, a valuable consideration however small is sufficient to support any contract; that inadequacy of consideration alone is not a fatal defect."

Anything of value agreed upon by the parties, where there is no fraud, is a sufficient consideration. *Bibelhausen v. Bibelhausen* (1915), 159 Wis. 365, 371, 150 N. W. 516. Appellant did not assist in earning and accumulating this estate. She married this man when he was eighty-nine years of age, and had known him for many years. Both parties to this contract regarded the consideration for the contract adequate, and this is a matter for the parties to judge for themselves. It is considered the contract is not void for want of consideration.

On the questions of fraud and the contract being unconscionable, appellant presents nothing that is not heretofore answered. While it is held in *Estate of Koeffler* (1934), 215 Wis. 115, 254 N. W. 363, that an efficient presumption of fraud may arise where a prospective husband obtains from his intended wife a release of her marital rights to his property in consideration of marriage and a manifestly inadequate pecuniary provision in lieu thereof, it was said in *Bibelhausen v. Bibelhausen, supra:*

"While it is true that the circumstances characterizing the making of an antenuptial contract, where there is anything suggesting unfairness in the property provision, are to be scrutinized with care and the agreement held void if it was not freely and understandingly entered into, to challenge validity is to allege fraud and that the instrument was the result thereof. In such a case the burden to establish fraud is on

the party alleging it, and such burden can only be efficiently lifted by clear and satisfactory evidence. The mutual intentions of the parties, in such circumstances, are just as binding as is any other agreement. There is nothing inherently suspicious or bad about such an agreement. The contrary logic in the findings is wrong as decidedly shown by the decisions of this court. *West v. Walker,* 77 Wis. 557, 46 N. W. 819; *Deller v. Deller,* 141 Wis. 255, 124 N. W. 278; *Oesau v. Estate of Oesau,* 157 Wis. 255, 147 N. W. 62."

We find no evidence of fraud, as the terms of the contract are exactly as she understood them to be, and at the time of entering into the contract they were agreeable and satisfactory to her. No claim is made that there were any false representations prior to entering into the agreement.

Counsel for appellant argues that it is against sound public policy to allow a husband to contract with his wife after their marriage to reduce the rights she has already acquired in his estate, and that therefore this contract should be declared void. It is contended that when this court held in *Estate of Cortte* (1939), 230 Wis. 103, 283 N. W. 336, that a postnuptial contract is no longer against public policy because of the enactment of sec. 6.015, Stats., we overlooked the true reason for the rule that a wife could not contract with her husband after marriage in regard to the surrender of her rights in his estate, which is that the home is the rock upon which society is founded and to allow a husband to so contract with his wife is to introduce an ample field of discord.

While the statute provides for a widow's right to dower in her husband's estate, sec. 233.01, Stats., likewise provision is made for a husband's curtesy right in the wife's estate, sec. 233.23. But this does not mean that the legislature may not authorize either party to contract relative to these rights. This is a question of policy for the legislature and the legislature has spoken. In *Wait v. Pierce* (1926), 191 Wis. 202, 210, 209 N. W. 475, 210 N. W. 822, it was said:

"It seems too clear for argument that sec. 6.015 further modified the rights of husband and wife as they existed at com-

mon law and that it was designed to place them on a basis of equality before the law not only in the particulars mentioned but 'in all other respects.'"

In *First Wisconsin Nat. Bank v. Jahn* (1922), 179 Wis. 117, 125, 190 N. W. 822, it was said, with reference to sec. 6.015, Stats., that—

"it means what it says, and that is that women shall be as free as men to make personal contracts."

This has been the law of this state for a number of years, and the legislature has not seen fit to change it. A married woman may contract with reference to her separate property or dispose of it in any manner she sees fit. She has the right to contract with her husband with reference to it and she may give it to him if she wishes to do so. If these parties had been younger when they were married and this appellant had permitted her husband to squander all of her separate property, it could be argued just as plausibly that it is against sound public policy to permit a married woman to manage and operate her individual estate where she has inherited it from her former husband. The unfortunate results in a given instance do not necessarily determine the advisability of public policy. In the passage of sec. 6.015 the legislature must have determined that a married woman was wholly competent to care for her rights. Had this contract provided that appellant was to receive one half of the property of her husband this case undoubtedly would not be here. It is sound public policy that married women have individual rights the same as unmarried women, and especially the right to contract. They have the same protection of the law of contracts that any other person has. Thus they cannot be harmed unless they enter into an unfortunate contract, but as against that, they have the benefit of contracts entered into which are to their advantage.

It is considered that appellant is bound by her contract, and the petition was properly dismissed.

*By the Court.*—Judgment affirmed.